**SULLIVAN ELECTRIC COMPANY,**
**Appellant,**

v.

**Malcolm C. McDONALD, and wife, Shelby J. McDonald, Appellees.**

Supreme Court of Tennessee.

July 26, 1976.

Jerry W. Carnes, Branstetter, Moody & Kilgore, Nashville, for appellant.

Stephen C. Baker, Dearborn & Ewing, Nashville, for appellees.

## OPINION

HENRY, Justice.

This is a workmen's compensation case in which the primary issue for our determination is whether the stepmother of a deceased workman is a member of the class of dependents entitled to receive death benefits under Section 50–1013, T.C.A. The trial judge determined that she was properly entitled to receive compensation benefits. We are in full accord with that determination.

### I.

On September 6, 1974, the deceased, Bradley McDonald, age eighteen, was electrocuted while working in the course and scope of his employment as an electrician's helper with Sullivan Electric Company. At the time of his death he was living with his natural father, stepmother, and two younger stepsisters, as a family unit, in an apartment in Nashville.

The appellees, Malcolm and Shelby McDonald, are the natural father and stepmother of the deceased employee. For many years prior to June 1974, the deceased's stepmother had been disabled as a result of contracting poliomyelitis as a child. Her disability was such that her right arm was completely paralyzed, although it could be physically moved with the aid of her left arm. In addition, her left arm was paralyzed from the shoulder to the elbow, thereby limiting movement to her left forearm and hand.

For many years previously, Shelby McDonald had been treated for her paralysis and had undergone several operations performed by Dr. Don Eyler, a Nashville orthopedic surgeon. In order to continue these treatments, and in anticipation of further orthopedic surgery, the appellees moved to Nashville in the early part of June, 1974 from their previous residence in Indiana.

At the time of their move, the decedent was seventeen years of age, had been graduated from high school, and was desirous of leaving his natural mother's home, also in Indiana, where he had resided since his parents' divorce in 1971. As a result of discussions with his father concerning the increased financial burdens occasioned by the appellees' recent move to Tennessee, the decedent agreed to move to Nashville. In the latter part of June 1974, the decedent joined the appellees in their apartment, where he resided until his death on September 6, 1974.

The decedent began working for Sullivan Electric on September 4, 1974, at a gross weekly wage of $123.70. The appellees' income for a reasonable period prior to the decedent's death, exclusive of any contributions from him was $176.00 per week. This amount reflects, in substantial part, the earnings of the deceased employee's father, a long haul truck driver.

Pursuant to the previous agreement with his father, the decedent voluntarily contributed between thirty ($30.00) and forty ($40.00) dollars per week for the family finances. In addition, he also contributed cash from his savings, bought gas for the family car, purchased groceries on various occasions, and purchased some school supplies for his two stepsisters. The decedent also performed numerous household chores and duties which his invalid stepmother was unable to accomplish.

Furthermore, since his father's occupation required considerable overnight travelling, the deceased was called upon to provide nursing care for his invalid stepmother. Such care included, among other things, helping her to dress, lifting her out of bed, taking her to the doctor, giving her

medicine, feeding her, taking her shopping, and otherwise caring for her general needs.

Appellees insist that they are entitled to workmen's compensation benefits by virtue of their being 57% dependent upon the deceased employee at the time of his death. In addition, they seek the $750.00 medical and funeral expense benefits authorized by Section 50–1004, T.C.A.

The trial court determined that the appellees were 46% dependent on the monetary contributions and services provided by the deceased workman. A judgment was thereby awarded to appellees in the amount of $19.91 per week, not to exceed $28,000.00, in addition to $750.00 medical and funeral expense benefits.

## II.

The statutory dependents of a deceased workman are enumerated in Section 50–1013(a)(3), T.C.A., and specifically include the following relationships:

Wife, child, husband, mother, father, grandmother, grandfather, sister, brother, mother-in-law, and father-in-law
. . . .

Subsection 50–1013(b), T.C.A. applies this same classification in determining *partial* dependency benefits:

Any member of a class named in subdivision (a)(3) who regularly derived part of his support from the wages of the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto shall be considered his partial dependent, and payment of compensation shall be made to such dependents in the order named.

Since the term "stepmother" is not specifically included within this statutory enumeration, the initial question for our determination is whether the term "mother", as used in the statute, was intended by the Legislature to include "stepmother".

This Court has consistently followed the policy of giving the Workmen's Compensation Law a liberal construction in order to accomplish the beneficent objects and purposes intended by the compensation stat-

utes. *Curtis v. Hamilton Block Co.,* 225 Tenn. 275, 466 S.W.2d 220 (1971); *Johnson Coffee Co. v. McDonald,* 143 Tenn. 505, 226 S.W. 215 (1920). See also Section 50–918, T.C.A. Professor Larson, in his treatise on Workmen's Compensation Law, at section 62.21 of volume two (1976), candidly expresses such liberality of construction in the following manner:

[B]ecause of the beneficient character of the [workmen's compensation] legislation, established definitions and rules will usually be stretched as far as precedents will allow, to take care of meritorious cases of dependency.

In the present case, however, it is unnecessary that we "stretch" any established definitions. This Court has, on numerous prior occasions, extended workmen's compensation benefits to persons not otherwise included under the precise language of Section 50–1013(a)(3). For example, the term "child", as used in this statute, has been held to include a stepchild, *Williams v. Travelers Ins. Co.,* 530 S.W.2d 283 (Tenn. 1975); grandchildren, *Cherokee Brick Co. v. Bishop,* 156 Tenn. 168, 299 S.W. 770 (1927); an illegitimate child, *Portin v. Portin,* 149 Tenn. 530, 261 S.W. 362 (1923); unrelated children, *Atkins v. Employers Mutual Ins. Co.,* 208 Tenn. 539, 347 S.W.2d 49 (1961); *Wilmoth et al. v. Phoenix Utility Co. et al.,* 168 Tenn. 95, 75 S.W.2d 48 (1934); and even a nephew, *Southern Motor Car Co. v. Patterson,* 168 Tenn. 252, 77 S.W.2d 446 (1935).

In determining eligibility for workmen's compensation benefits with respect to dependent children we have repeatedly concluded that mere relationship is not the test, but "support and actual dependency" are the determinative criteria. *Williams v. Travelers Ins. Co., supra* at 285; *Atkins, supra; Wilmoth, supra.* The rationale in support of such a test was expressed by this Court in *Portin v. Portin, supra,* through the following language:

The Workman's Compensation Act is not a statute of descent or distribution. It was intended to relieve society of the burden of caring for injured workmen or the dependents of deceased workmen, and

to place that burden upon the industry employing the workman. In case of the workman's death, the lawmakers were concerned for the care of his dependents, not about the devolution of the workman's property. The *dependency* of the claimant is the true basis of his right to compensation rather than blood or marriage. Relationship is really only evidence of dependency. (Emphasis supplied). 149 Tenn. at 535–36, 261 S.W. at 363.

We see no reason why this same rationale should not also be applied in determining eligibility with regard to partially dependent stepmothers.

Appellant cites *Milne v. Sanders,* 143 Tenn. 602, 228 S.W. 702 (1920), as holding by dictum, that a stepmother is not a dependent under the statute. However, in *Milne* this Court sustained a compensation award made jointly to the natural father and stepmother of a deceased workman. Reasoning that since the father alone would have been entitled to the entire amount of the award, the Court concluded that *even if* it was error to name the stepmother as a dependent, it was "a harmless one." 143 Tenn. at 626–27, 228 S.W. 702. We do not interpret *Milne* as excluding a stepmother from the class of compensable partial dependents.

Appellant also relies upon *Gray Eagle Marble Co. v. Meek,* 159 Tenn. 577, 21 S.W.2d 625 (1929), a case wherein workmen's compensation benefits were denied to a dependent aunt of the deceased employee, because she did not fall within a class specifically enumerated by the statute. Distinguishing earlier cases which had awarded compensation benefits to various categories of individuals included within the enumerated class of "children", the Court concluded that:

> While we have given the act a liberal construction with respect to those *coming within the classes enumerated,* we cannot

extend its provisions to *classes* not named therein. (Emphasis supplied). 159 Tenn. at 581, 21 S.W.2d at 626.

In the present case we are concerned with a term (i. e., stepmother) which is logically includible with the broader, statutorily enumerated class of "mothers".[1] We are not here concerned with an entirely separate and distinct class of dependents, as was the case in *Gray Eagle Marble Co., supra.*

It should also be noted that in our present Compensation Law the term "parent" is occasionally used interchangeably with the terms "mother" and "father". Section 50–1013(c)(7), for example, employs the term "parent" in determining the amount of compensation payable in death cases, instead of referring to "mother" and "father" specifically. As used in workmen's compensation statutes, the term "parent" is ordinarily given a very broad interpretation. This is discussed in Blair, Reference Guide to Workmen's Compensation, § 14:06 at page 14–26 (1968), wherein it is stated that:

> The term "parent" for the purpose of the workmen's compensation statutes generally includes parents by adoption, *stepparents.* . . . (Emphasis supplied). *Ibid.*

We are in accord with such a statement as it applies to our workmen's compensation dependency statutes. Therefore, in light of the authorities herein discussed, we hold that the general class term "mother", as used in § 50–1013, T.C.A., was intended by the General Assembly to include also that category of individuals identified by the term "stepmother."

### III.

We next consider whether the trial judge properly concluded that the appellees were, in fact, partially dependent upon the decedent at the time of his death. We limit

---

1. Courts in various other jurisdictions have interpreted the terms "mother" or "father" for purposes of their workmen's compensation statutes to include "stepmother" or "stepfather." *See, e. g. Custer v. Reitz Coal Co. et al.,* 174 Pa.Super. 595, 101 A.2d 433 (1953); *Black Mountain Corp. v. Jones,* 283 Ky. 707, 142 S.W.2d 973 (1940). *Cf. Consolidated Underwriters v. Ward et al.,* 57 S.W.2d 964 (Tex.Civ. App.1933).

our review on appeal, of course, to whether there is any material evidence upon which the trial court's findings may be based. *Cassell Bros., Inc. v. Cole,* 519 S.W.2d 796 (Tenn.1975).

■ Appellant argues that the proof shows only that the deceased workman "was just another family member," performing no more than those "ordinary and expected household chores". In our view, the services provided for his family by this young workman were certainly more substantial than those normally provided by an eighteen year old member of a household, because of the peculiar needs of his stepmother. Our examination of the record in this case clearly indicates that there is material evidence to support the trial court's findings that the monetary value of the cash and services contributed by the deceased workman to the appellees "at and for a reasonable time immediately prior to the accident" was $115.00 per week.

### IV.

Appellant insists that the trial court erred in considering evidence as to the stepmother's increased state of dependency which occurred after the decedent's death. Specifically, appellant argues that evidence, including photographs, of the stepmother's increased physical disability as the result of an operation which occurred *after* the workman's death was improperly considered by the trial court in determining the amount of the appellees' partial dependency.

■ It is well-settled in Tennessee that dependency is to be determined as of the date of the workman's injury or death, and subsequent events which affect the right of dependents to compensation will not be considered, provided that such persons were dependents within the meaning of the Act at the time of the injury or death. *Royal Indemnity Co. v. Jackson,* 201 Tenn. 500, 300 S.W.2d 893 (1957); *Johnson Coffee Co. v. McDonald,* 143 Tenn. 505, 226 S.W. 215 (1920).

The appellees argue that evidence of Shelby McDonald's subsequent operation did not affect the trial court's determination regarding the value of the deceased workman's contributions immediately prior to his death. Instead, it is suggested, this evidence was only used by the trial judge in order that he might better understand the true nature and extent of Shelby McDonald's physical condition at the time of the workman's death.

The amended final order of the trial judge clearly indicates that his determination as to dependency and the percentage of the workman's contribution was based upon earnings and contributions prior to the accident.

■ We, therefore, hold that the trial court's consideration of appellee Shelby McDonald's physical condition subsequent to the decedent's death, under the circumstances of this case, was not improper or prejudicial.

### V.

The remaining issue involves the manner in which the trial court computed the percentage of the appellees' partial dependency on the decedent. The trial court used the figure of $176.00 per week as the "total income" of the appellees, without taking into account the monetary value of the cash and services contributed by the deceased employee. Both parties agree that this basis for computation was erroneous and assert that the appellees' "total income", in addition, includes the *gross* amount of the decedent's contributions. Such an interpretation, however, requires that the cost of the decedent's own support be included in the dependents' "total income", a result with which we do not agree.

Section 50–1013(c)(10), T.C.A. requires that the *total income* of the dependents be used in determining the amount of their partial dependency. Specifically, the statute provides in pertinent part that:

Partial dependents shall be entitled to receive only that proportion of the benefits provided for actual dependents which the average amount of the wages regu-

larly contributed by the deceased to such partial dependent at, and for a reasonable time immediately prior to the injury, bore to the *total income* of the dependent during the same time. (Emphasis supplied).

■ A controversy similar to that involved in the present case arose in *Pilot Oil Corp. v. Sellers,* 225 Tenn. 700, 475 S.W.2d 668 (1972), wherein the trial court refused to include the cost of the decedent employee's own support in determining the percentage of his family's partial dependency. Holding such a computation to be in error, this Court concluded that under Sections 50–1013(b) and 50–1013(c)(10), T.C.A., "partial dependency compensation payments are to be determined on the *actual support contributed* by the employee" and "not necessarily the gross sum turned over to the parent" by the decedent. (Emphasis supplied). 225 Tenn. at 704, 475 S.W.2d at 670.

The effect of such an interpretation is discussed in the following language by Professor Larson in volume two of his treatise on Workmen's Compensation Law (1976), at Section 63.12:

> [I]f the the decedent's contribution is offset by the value of the board and room received, he is doing no more than to "pull his own weight"; he is merely supporting himself, with nothing left over to represent support of dependents.

Although in the present case the actual support in cash and services contributed by the decedent exceeds the cost of his own support, this same rationale applies.

■ We, therefore, hold that "total income", for purposes of determining partial dependency benefits under Section 50–1013(c)(10), T.C.A., includes the *actual support contributed* by the deceased workman rather than the gross sum received by the dependent. In so holding, we should note, as did the Court in *Pilot Oil,* that:

> In determining the extent, if any, by which the support contributions should be reduced by the part thereof expended in decedent's own support, the cost of decedent's own support may be credited with the value of his personal services to his [dependent family], if this service has monetary value. 225 Tenn. at 706, 475 S.W.2d at 671.

In accordance with our interpretation of Section 50–1013(c)(10), T.C.A., we also hold that the proper method to be used in computing the percentage of partial dependency under our Workmen's Compensation Law is to determine the ratio of the *actual support contributed* by the deceased employee to the *total income* of the dependents.

In the present case it is undisputed that the appellees' income, exclusive of any contributions by the decedent, was $176.00 per week. The monetary value of the cash and services contributed by the deceased workman immediately prior to his death was $115.00 per week, although the cost of his support was $34.50 per week. Thus, the actual support contributed was only $80.50 per week, creating a *total* weekly *income* to the appellees of $256.50.

Applying the formula discussed *supra,* to the facts in the present case, we compute a partial dependency of approximately thirty-one and one-third percent (31.38%). This produces a net weekly compensation award of $13.58 in favor of the appellees.[2] Such an award, however, is less than the $15.00 per week minimum amount payable to partial dependents in death cases pursuant to Section 50–1013(c)(11), T.C.A. The 1974 amended version of this statute in effect at the time of the decedent's death provided, in pertinent part, as follows:

> The compensation payable in case of death to persons wholly dependent shall be subject to a maximum of seventy dollars ($70.00) per week and a minimum of fifteen dollars ($15.00) a week; provided, that if at the time of the injury the employee receives wages of less than fifteen dollars ($15.00) a week, the compen-

---

2. The net weekly award is computed by taking 31.38% of that award which would have been granted to appellees if they had been wholly dependent, under § 50–1013(c)(7), T.C.A.

(31.38% × 35% payable to wholly dependent parents × decedent's weekly wage of $123.70 = $13.58 per week). See § 50–1013(c)(10), T.C.A.

sation shall be the full amount of such wages a week, but *in no event shall the compensation payable under this provision be less than fifteen dollars ($15.00) a week.* The compensation payable to partial dependents shall be subject to the same maximum and minimum specified in the foregoing sentence; provided, however, that *if the income loss of said partial dependents by such death be less than fifteen dollars ($15.00) per week, then the dependents shall receive the full amount of the income loss. . . .* (Emphasis supplied).

Since the appellees' income loss is, concededly, in excess of fifteen dollars ($15.00) per week, and as their weekly compensation award of $13.58 falls below the statutory minimum authorized under Section 50–1013(c)(11), *supra,* we herein modify such award to the fifteen dollar ($15.00) per week statutory minimum, not to exceed twenty-eight thousand ($28,000) dollars, plus medical and funeral expenses of $750.00.

Pursuant to the discussion herein, the decree of the trial court is hereby modified and affirmed.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.