Mary Elizabeth VINSON,
Plaintiff-Appellee,

v.

FIRESTONE TIRE AND RUBBER COMPANY, et al., Defendants-Appellants.

Supreme Court of Tennessee.

Aug. 15, 1983.

Charles R. Ray, Barrett & Ray, P.C., Bruce Boyens, Barrett & Ray, P.C., Nashville, for plaintiff-appellee.

David T. Hooper, Gracey, Maddin, Cowan & Bird, Nashville, for defendants-appellants.

## OPINION

ALLISON B. HUMPHREYS, Special Justice.

This is a worker's compensation case. The plaintiff, Mary Elizabeth Vinson, recovered a judgment for nine weeks temporary total disability and the defendants, Firestone Tire and Rubber Company and Insurance Company of North America, Incorporated, have appealed.

The brief opinion of the trial court adequately summarizes the case, the facts, and the basis for the court's holding. The opinion is, in pertinent part, as follows:

Plaintiff was employed in the Banbury Department of Firestone where chemicals are mixed with rubber. On March 8, 1981, she developed problems of sneezing, watering eyes, nose and throat burning from exposure to the fumes caused by mixing chemicals with rubber.

She was treated by the company doctor and he recommended that she be put on another job. Upon returning to work she was assigned to driving a tow truck.

On July 30, 1981, plaintiff was placed on another job in the Stock Prep Department. Within two hours she was sent home because of a reaction from the occupational disease.

She remained off from work until October 7, 1981, when she was allowed to return to work. But for the occupational disease, she could have worked during this period of time but no job was available where she was not exposed to the harmful substance causing the problem.

Under these facts the Court concludes the occupational disease was a proximate cause of the temporary total disability from July 30, 1981, to October 7, 1981.

It is evident from this holding of the trial court that the question presented is whether an employee, who suffers a temporary inflammatory reaction to fumes from chemicals in materials used in the manufacturing process where she works, but who could work anywhere else in the defendant's plant except where she would be exposed to fumes, is entitled to temporary total disability benefits during a nine week period of unemployment which was brought about solely by failure of the employer to use the employee's services in other jobs where she would not be exposed to the harmful agents.

The question may be further refined, to be: whether the accepted rule that temporary total disability is the period of time required for the worker to be restored to the highest degree of health the nautre of the injury permits (often called the healing period), is to be extended to cover the addi-

tional time it takes the employer to re-employ the worker in another job that does not expose the worker to irritating and incapacitating fumes.

It would seem that as the entire worker's compensation system of law is statutory, if an additional period of time (a period of unemployment not occasioned by incapacity to work on account of health conditions) is to be added to the present healing period, that this should be done by the Legislature and not by this Court.

It is clear from the trial court's opinion that the temporary total disability period was not based on plaintiff's general incapacity to work. It was based, as it says in so many words, on the fact that no job was available at which plaintiff could work.

This finding that plaintiff was only kept from work for lack of an available job is, of course, binding on this Court, and the case has to be decided here on that basis. Out of an abundance of caution, however, the record has been carefully read and it clearly discloses that plaintiff was only kept from work because she was not re-employed by defendant Firestone. It appears from the record that plaintiff was seen on March 17, October 27, and November 19, by one Michael P. Miller, M.D., and on all three occasions she was found to be asymptomatic and Dr. Miller summarized plaintiff's condition during the times that he saw her in testimony, as follows:

Q And during the times that you were treating her was she ever requested by you to refrain from any work whatsoever?

A No. You mean physical work at the plant?

Q Right.

A No. There was no restriction on her physical abilities to work.

As stated earlier, unless we are to extend the period of temporary total disability to include the period of time the worker remains unemployed after a lay-off from a transient disablement, the judgment of the trial court will have to be set aside; and, we think it must be.

Interestingly, this question has come up before. In the case of *Douglass v. Gresen Manufacturing Co.,* 300 Minn. 82, 217 N.W.2d 846 (1974), the worker contracted contact dermatitis in a compensable accident. He was told by a doctor that he could work in other industries where he would not be exposed to certain chemicals. He was unable to find work and sought benefits for temporary total disability from the period of the accident to the date of new employment. The Court held that the period of temporary total disability ends when medical opinion says that claimant is physically able to work again, not when claimant eventually finds a job. This may cause a "gap" in income in the period between the end of benefits and the new job, but that this was a problem for the Legislature.

Following this opinion, Minnesota adopted an unusual statutory amendment which was later construed by the Court to provide temporary total benefits until the claimant found work. *Pieske v. The City of Minneapolis,* 259 N.W.2d 602 (Minn.1977).

As it is not the proper role of this Court to extend the meaning of a statute beyond its long accepted boundary, and as the Court is not equipped to deal with all of the variations that could arise if we did try to legislate under the guise of statute construction, we decline to do so and set aside the judgment of the trial court. Costs against plaintiff.

FONES, C.J., and HARBISON, BROCK and DROWOTA, JJ., concur.