# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 2, 2005 Session

## DREXEL WAYNE LONG, ET AL. v. MID-TENNESSEE FORD TRUCK SALES, INC., ET AL.

**Appeal by Permission from the Special Workers' Compensation Appeals Panel**
**Chancery Court for Rutherford County**
**No. 00WC-1408     Robert E. Corlew, III, Chancellor**

---

### No. M2003-00300-SC-WCM-CV - Filed March 18, 2005

---

We granted review in this workers' compensation case to determine whether "nursing services," as used in Tennessee Code Annotated section 50-6-204(a) (1999), includes care provided by an injured employee's spouse where the spouse is a certified nurse technician. After reviewing the record and applicable authority, we conclude that care provided by a certified nurse technician is compensable under the Workers' Compensation Law irrespective of the relationship between the caregiver and the employee. We further hold that the care here was reasonably necessary and was provided pursuant to what the employee understood to be the physician's orders. Accordingly, we reverse the findings of fact and conclusions of law of the Special Workers' Compensation Appeals Panel as to this issue and remand to the trial court for a determination of the value of the nursing services rendered by Mrs. Long. We affirm as to the other issues raised by the appellant employee.

**Tenn. Code Ann. § 50-6-225(e); Findings of Fact and Conclusions of Law of the Special Workers' Compensation Appeals Panel Affirmed in Part and Reversed in Part; Judgment of the Trial Court Affirmed in Part and Reversed in Part, and Remanded.**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which Frank F. Drowota, III, C.J., and JANICE M. HOLDER and WILLIAM M. BARKER, JJ., joined. ADOLPHO A. BIRCH, JR., J., not participating.

Scott Daniel and Melanie S. Lepp, Murfreesboro, Tennessee, for the Appellant, Drexel Wayne Long.

Richard E. Spicer and Christian M. Garstin, Nashville, Tennessee, for the Appellees, Mid-Tennessee Ford Truck Sales, Inc., and Travelers Insurance Company.

# OPINION

## *Background*

On July 12, 1995, the employee, Drexel Wayne Long ("Long"), injured his right foot while in the course and scope of his employment with Mid-Tennessee Ford Truck Sales, Inc. ("Mid-Tennessee") in Nashville, Tennessee. Long filed a workers' compensation claim seeking benefits for the injury, including compensation for the nursing services provided to him by his wife, a certified nurse technician, following surgery for the injury. The complaint also sought benefits based on weight gain and sleep apnea allegedly resulting from the injury. The following evidence was presented before the trial court.

At the time of the injury, Long was working at the parts counter for Mid-Tennessee. His job duties included filling parts orders by retrieving the required parts from the employer's warehouse and bringing them to the counter.

On July 12, 1995, Long was carrying a converter weighing thirty-five to forty pounds on his right shoulder when he felt a sharp pain in his right foot. He testified that "it felt like my right foot just broke in half. . . . I got up, and I couldn't hardly put no weight on my right foot." Mid-Tennessee initially did not believe that Long had sustained a work-related injury and refused to provide medical care.

Long had sustained at least three prior injuries to his right leg and foot. In 1983, Long injured his right leg in a motorcycle accident and underwent five surgeries to repair the damage resulting from the accident. In 1988, Long broke his right ankle in a slip and fall accident in the course and scope of his employment with a previous employer, Bud Jones Trucking. In 1991, Long fractured his right ankle again, this time while working for Mid-Tennessee. Following both the 1988 and 1991 injuries, Long filed and settled workers' compensation claims and thereafter returned to work full time.

Dr. Barrett Rosen, who treated all of Long's leg and foot injuries, performed fusion surgery on his right ankle following the 1991 accident. After the fusion surgery, Dr. Rosen restricted Long from standing or walking for prolonged periods. In 1992, Dr. Rosen assigned Long a 40% impairment rating to the right foot. Long continued to complain of pain in the ankle, and as of 1994, Dr. Rosen had restricted Long from standing for more than one hour at a time. As a result of his multiple injuries, Long developed degenerative arthritis in his foot. The evidence showed that in 1993 and 1994, Long complained to Dr. Rosen of having some difficulty working. In 1994, Long reported "significant swelling" when he was required to be on his feet, which caused him pain and took several days to go away.

Dr. Rosen authorized Long to return to work on light duty following his injury, but Mid-Tennessee had no light-duty work available for Long and made none available. Long has not worked

since.  He has a high school diploma and has taken some college courses.  Additionally, he has worked as an insurance agent and as a supervisor for various employers.

Long continued to have problems with his right foot and underwent a second ankle fusion on February 4, 1997.  He remained in the hospital for several days before being discharged.  Long testified that when he went home, he was in a full leg cast, was non-ambulatory, and was confined to bed.  He was instructed to use a "polar pak ice machine" to regulate the temperature of his leg.  He testified that the ice in the polar pak had to be constantly monitored to ensure that the correct temperature was maintained.  Shortly after the operation, Long's wound developed a staph infection which took several months to heal.  The treatment of the infection required that his bandages be changed every four hours.  Long testified that he understood from Dr. Rosen's instructions that he would need home medical care following his surgery.

As a result, Long and his wife, Billie Sue Long, both testified that they requested that home nursing care be provided through the workers' compensation carrier, but they were refused.  Since Long was bedridden, his wife took seventeen weeks off from her job at Whirlpool to care for him.  Mrs. Long testified that she had been a Certified Nurse Technician ("CNT") since 1994 and that, although she did not work as a CNT at Whirlpool, she had maintained her license and was in fact working as a CNT at the time of trial.

After the surgery,  Long continued to complain of significant pain and swelling in his right foot, right ankle, right leg, and back.  Long is unable to be physically active due to his injury, and Dr. Rosen eventually prescribed a motorized cart for him to use in getting around.  Since the injury, Long has gained a significant amount of weight which, he claims, contributed to or caused him to develop sleep apnea.  The evidence showed that Long, approximately six feet tall, weighed about 212 pounds in 1988; 252 pounds in 1990; 264 pounds in 1996; and 309 pounds in November 1999.

Dr. Rosen testified by deposition that the July 1995 injury significantly aggravated Long's problems with his right foot.  Dr. Rosen stated that Long's injury has affected his gait, which has caused him to have back pain.  The medical records indicate that Long began complaining of back pain in 1990.  In 1999, Dr. Rosen testified by deposition that the stresses and strains on Long's back caused by the changes in Long's foot and leg "will create difficulties in the back," but he stated that "the back, itself, was not injured."  Dr. Rosen also stated that Long's inability to be active contributed to his weight gain.

Dr. Rosen assigned a permanent medical impairment of 60% to the right foot, 42% to the lower right extremity, and 17% to the body as a whole.  Dr. Rosen testified in his 1999 deposition that 40% of the foot impairment was attributable to the prior injuries.  He also testified that a portion of the lower right extremity and body as a whole impairment ratings would be attributable to the prior injuries, but he did not give a specific number.

Dr. Jeffrey Herring, who also treated Long, adopted the impairment ratings assigned by Dr. Rosen but opined that only 14% of the impairment to Long's foot and only 4% of the impairment to the body as a whole was attributable to the 1995 injury and the 1997 surgery.

Dr. David S. Knapp, a rheumatologist who performed an independent medical examination, testified that he believed Long's work activities aggravated the pain Long experienced in his foot. He testified, however, that because of Long's history of foot and leg injuries and the 1991 fusion surgery, the 1995 injury would have happened eventually regardless of the type of work Long did. Dr. Rosen also testified in his 1996 deposition that the degenerative changes were "likely" to happen no matter what but were probably speeded up by Long's prolonged standing and walking at work.

Long developed severe obstructive sleep apnea at some point after the 1997 surgery and, in turn, had surgery to address the sleep apnea. Following that surgery, Dr. Jeffrey A. Paffrath found that the surgery had had a minimal corrective effect and that further treatment would be required. Dr. Paffrath stated that the sleep apnea more probably than not arose out of Long's 1995 injury. Dr. Paffrath did not assign an impairment rating for the sleep apnea, stating that although the AMA Guides discuss obstructive sleep apnea, they "do[] not give any clear guidance as to how to arrive at a[n] impairment rating."

Dr. William H. Noah diagnosed Long's sleep apnea and opined that Long's injury and condition could, and probably did, increase the severity of Long's sleep apnea. However, like Dr. Paffrath, Dr. Noah did not assign an impairment rating, noting that treated obstructive sleep apnea "has no permanent disability."

The trial court denied Long's claim for permanent total disability, finding a 40% vocational disability apportioned to the right foot. The trial court declined to apportion the injury to the leg or to the body as a whole and also denied benefits based on the weight gain and sleep apnea. The trial court denied without comment the claim for reimbursement for Mrs. Long's nursing care. The Special Workers' Compensation Appeals Panel affirmed the trial court in all respects. We accepted review.

## ANALYSIS

### *Standard of Review*

Our standard of review of factual issues in a workers' compensation case is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (1999); see also Houser v. Bi-Lo, Inc., 36 S.W.3d 68, 70-71 (Tenn. 2001). When the trial court has seen the witnesses and heard the testimony, especially where issues of credibility and the weight of testimony are involved, the appellate court must extend considerable deference to the trial court's factual findings. Houser, 36 S.W.3d at 71. In reviewing documentary evidence such as depositions, however, we extend no deference to the trial court's findings. Ferrell v. Cigna Prop. & Cas. Ins. Co.,

33 S.W.3d 731, 734 (Tenn. 2000). Our standard of review of questions of law is de novo without a presumption of correctness. Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003).

### *Compensability of Nursing Services*

Tennessee Code Annotated section 50-6-204(a)(1) (1999) provides that "nursing services . . . as ordered by the attending physician . . . as may be reasonably required . . ."[1] are compensable. In Sullivan ex rel. Hightower v. Edwards Oil Co., 141 S.W.3d 544 (Tenn. 2004), this Court construed section 50-6-204(a)(1) to require that nursing services be rendered by a professional nurse, rather than by a family member, in order to be compensable. Id. at 548. In Sullivan, we held that a mother was not entitled to compensation for the care she provided to her adult daughter because the mother was not a professional nurse. Id.

Here, however, Mrs. Long testified that she is a certified nurse technician. In Tennessee, certified nurse technicians, also called nurse aides, are licensed by the state Department of Health. See Tenn. Comp. R. & Regs. 1200-8-6-.15 (2005). The Department of Health defines certified nurse aides as "nursing personnel." See id. at 1200-8-6-.01(33). Although Mrs. Long testified that she was not working as a nurse aide at the time of Long's surgery, she testified that her certification and license were current at the time. Thus, she was "a person whom the medical profession recognizes as a nurse." Sullivan, 141 S.W.3d at 548. Unlike the caregiver in Sullivan, Mrs. Long is a nursing professional licensed to give precisely the type of care required by her husband in this case.

Mid-Tennessee argues that because Mrs. Long rendered nursing services voluntarily and without charge to her husband, her services were merely "wifely duties" and are not compensable. However, we believe this argument penalizes the Longs for the situation that Mid-Tennessee created by refusing to pay for nursing care. Under the circumstances, where workers' compensation benefits were denied, it was likely more economically feasible for the Longs to have Mrs. Long, a nursing professional, care for her husband rather than finding the resources to pay another professional. We see no reason and no statutory basis to require a family to hire a stranger to provide compensable services when a member of the family is qualified to provide those services.

---

[1] The full text of the clause is:

> The employer or the employer's agent shall furnish free of charge to the employee such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus, including prescription eyeglasses and eye wear, such nursing services or psychological services as ordered by the attending physician and hospitalization, including such dental work made reasonably necessary by accident as herein defined, as may be reasonably required . . . .

Tenn. Code Ann. § 50-6-204(a)(1).

Tennessee Code Annotated section 50-6-204(a)(1) also requires that to be compensable, the nursing services must be "ordered by" the attending physician. Here, the record does not contain an express order from Dr. Rosen authorizing Long to receive home nursing services. Both Long and Mrs. Long testified, however, that because Long was in a full leg cast, had developed a staph infection, and was bedridden, he required continuous care. Moreover, they testified that they understood from Dr. Rosen that Long required home nursing care.

As we have often observed, the Workers' Compensation Act is remedial in nature and is to be given a liberal and equitable construction in favor of workers. Sullivan Elec. Co. v. McDonald, 541 S.W.2d 112, 115 (Tenn. 1976). We think that a physician discharging a patient to home, knowing that the patient will be confined to a bed and unable to ambulate or perform other functions without assistance, and knowing that the patient will require care such as changing wound dressings or requiring other such attention, must certainly contemplate that nursing services will be required. The statute requires only that a physician "order" the services, not that the order be reduced to writing. Here, the Longs' testimony that they understood Dr. Rosen to authorize nursing services was unrebutted. Under these unique circumstances, therefore, it was error for the trial court to refuse to award compensation to Mrs. Long for her services.

Long argues that Mrs. Long's compensation should be based on her lost wages at Whirlpool, the job at which she was employed when she took leave to care for Long. However, the statute provides that it is the nursing services that are compensable, not Mrs. Long's lost wages. Therefore, we remand to the trial court for a determination of the value of the nursing services rendered by Mrs. Long, based on the cost of obtaining comparable care from a similarly licensed certified nurse technician or nurse aide at the time of Long's care.

### Temporary Total Disability

We next address Long's argument that because Mid-Tennessee did not or would not put him to work at a job meeting the light duty restrictions imposed by Dr. Rosen, Long is entitled to temporary total disability benefits for the period between the date of his injury and the date of his surgery. As the Panel recognized, an employee is not entitled to temporary total disability benefits simply because the employer does not have an available job which meets the employee's restrictions. Vinson v. Firestone Tire & Rubber Co., 655 S.W.2d 931, 932-33 (Tenn. 1983). In Vinson, we held that an employee was not entitled to temporary total disability where she had been released to work with the restriction that she not be exposed to the fumes that had caused her injury, but where the employer either did not have a job available or would not make a job available to the employee. Id. We therefore reject Long's argument that the trial court erred in denying him total temporary disability benefits.

### Injury to the Body as a Whole

Long next argues that the trial court erred in declining to apportion his injury to the body as a whole. The trial court apportioned a 40% vocational disability to Long's right foot only. Long's

complaint alleged injuries to his right foot, right ankle, right leg, and back, and further alleged that these injuries resulted in weight gain and sleep apnea. Mid-Tennessee argues that the medical proof does not support a finding that Long's foot injury caused permanent injuries to other parts of the body. The trial court and the Panel agreed with Mid-Tennessee, holding that Long had failed to sufficiently establish causation and permanency for the other alleged injuries.

Injuries to the foot and to the leg are "scheduled" injuries, as they are provided for in Tennessee Code Annotated section 50-6-207(3)(A)(ii)(n) and (o) (1999). An injury to the back is not scheduled; nor is disability resulting from weight gain or sleep apnea. See id.

Although a disability limited to a scheduled member must be attributed exclusively to that member, where the injury has caused disability to a portion of the body that is not statutorily scheduled, recovery may be had for disability to the body as a whole. Thompson v. Leon Russell Enters., 834 S.W.2d 927, 929 (Tenn. 1992). The mere fact that the AMA Guides provide a method for converting a scheduled member impairment to a whole body impairment does not permit an award for whole body disability. Rather, we must find a whole body impairment under Tennessee law. Id.; see also Reagan v. Tenn. Mun. League, 751 S.W.2d 842, 843 (Tenn. 1988). Such an award is only appropriate if it is "shown that the scheduled member injury caused a permanent injury to an unscheduled portion of the body." Thompson, 834 S.W.2d at 929. An award based on disability to the body as a whole is appropriate where, for example, an injury to the foot or leg causes an employee to limp or otherwise develop gait problems which cause permanent disability to the back. See, e.g., Riley v. Aetna Cas. & Sur., 729 S.W.2d 81, 84 (Tenn. 1987); McWhirter v. Kimbro, 742 S.W.2d 255, 259 (Tenn. 1987).

Here, there was no evidence of an injury to Long's back or leg caused by the 1995 injury. There are notes in the medical record that Long complained of pain in his back, as well as speculation by Dr. Rosen that Long's injury and its effect on his gait could cause Long to have back problems. Evidence of pain and speculation about back problems, however, is not sufficient to support a finding that Long has suffered a disability to the body as a whole.

As to the weight gain and sleep apnea, as the Panel noted, the record is devoid of evidence that those conditions are permanent. Both Dr. Noah and Dr. Paffrath declined to assess impairment ratings for the sleep apnea, and Dr. Noah specifically noted that when treated, sleep apnea does not cause permanent disability. In the absence of expert medical evidence establishing permanency for the conditions Long argues would support an award of disability to the body as a whole, we must affirm the trial court's and the Panel's decisions limiting Long's award to his foot. See Corcoran v. Foster Auto GMC, Inc., 746 S.W.2d 452, 458 (Tenn. 1988) (expert medical evidence required to show permanence "in all but the most obvious cases").[2]

---

[2] In light of our decision that Long has failed to show that the weight gain and sleep apnea were permanent conditions, we decline to reach Long's argument that the trial court and Panel erred in concluding that they were not caused by the 1995 injury.

***Limitation of Award to 40% of Foot***

Finally, Long argues that the trial court should have awarded total permanent disability rather than limiting the award to 40% of his foot. He argues that the evidence showed he is totally vocationally disabled. Mid-Tennessee argues that the trial court and the Panel were correct in determining that Long is not totally disabled.

The degree of vocational disability is a question of fact "to be determined from all the evidence, including lay and expert testimony." Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 629 (Tenn. 1999). Although the degree of anatomical disability is a factor in the determination, "the ultimate issue is not the extent of anatomical disability but that of vocational disability." Corcoran, 746 S.W.2d at 457.

The record shows that Long has a high school degree and has worked as an insurance agent. He has also worked as a supervisor for various employers. The evidence does not preponderate against the trial court's award of 40% permanent disability to the scheduled member.

***Conclusion***

After reviewing the record and applicable authority, we affirm in part and reverse in part the decisions of the trial court and the Special Workers' Compensation Appeals Panel and remand to the trial court for a determination of the value of the nursing services rendered by Mrs. Long . Costs of this appeal are taxed equally to the appellant, Drexel Wayne Long, and his sureties, and to the appellee, Mid-Tennessee Ford Truck Sales, Inc., for which execution may issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE