

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Rachel Hackney ) | Docket No.    2016-01-0091 |
| ) | |
| v. ) | State File No. 870-2016 |
| ) | |
| Integrity Staffing Solutions, Inc., et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Audrey A. Headrick, Judge ) | |

---

## Affirmed and Remanded - Filed July 22, 2016

---

This interlocutory appeal involves an employee who fell at work and sought medical treatment at an on-site clinic and then went to an emergency room without obtaining her employer's authorization.  She was later provided authorized medical treatment and assigned work restrictions the employer offered to accommodate.  The employee requested temporary partial disability benefits, arguing that the employer's offers of light duty were unreasonable.  She also requested payment of the unauthorized emergency room bill.  The trial court denied relief, and the employee has appealed.  Having carefully reviewed the record, we affirm the trial court's decision and remand the case.

Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board, in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Carmen Y. Ware, Chattanooga, Tennessee, for the employee-appellant, Rachel Hackney

Charles S. Poss, Chattanooga, Tennessee, for the employer-appellee, Integrity Staffing Solutions, Inc.

## Factual and Procedural Background

Rachel Hackney ("Employee") was employed by Integrity Staffing Solutions, Inc. ("Employer"), a temporary employment agency, when she suffered injuries to her left shoulder, arm, elbow, wrist, and hand on December 27, 2015.  Employee, who had been assigned to work on a loading dock at an Amazon distribution warehouse, reported

1

grasping a large container of packages to shake it, which would allow the packages to settle so that more could be put in the container. The container ripped apart unexpectedly, and Employee lost her balance and fell backward. In an attempt to break her fall, she landed on her outstretched left arm and hand, resulting in her injuries.

Employee reported her injury immediately and sought treatment at AmCare, Amazon's on-site medical clinic, at which time she completed an "Associate First Report of Injury." The form reflects that she suffered an injury to her left wrist when she fell backward onto her outstretched arm. It further indicates that first aid was offered and declined and that outside medical treatment was offered and declined. Employee testified that AmCare personnel assisted her in completing the form and that she was instructed to write "panel" in the blank next to a question regarding whether outside care had been offered. It does not appear that she was actually offered a panel of physicians at that time. Further, the AmCare records from that visit reflect that Employee was given first aid, making it unclear why the form reflects that she declined first aid. Employee testified that, at the time she completed the form, the only "treatment" she declined was transport via ambulance to a hospital. AmCare's notes also indicate that Employee returned shortly after her initial treatment and stated she was going to an emergency room, at which time she was referred to Employer.

Employer's safety manager, Joe Holland, testified that he was unaware Employee was seeking emergency care and that the proper procedure would have been for Employer's on-site representative to provide his contact information to Employee so she could call him to coordinate medical care. Employee acknowledged receiving Mr. Holland's contact information but, rather than contacting him directly, she provided that information to emergency room personnel. Upon receiving a call from the emergency room, Mr. Holland stated that he was unaware of an employee in need of medical care and, therefore, could not authorize the treatment. Employee nonetheless received emergency care consisting of x-rays, which revealed no abnormality, and instructions for wearing an ACE bandage and icing. She was diagnosed with a sprain of the left wrist and a contusion of the left hand. She was advised to limit use of the injured arm, apply ice, and follow-up with a physician.

Employee subsequently met with Mr. Holland to select an authorized physician from a panel. She chose Workforce Corporate Health, where she was seen by Dr. Jayant Eldurkar on December 31, 2015. Dr. Eldurkar released her to return to work with lifting and climbing restrictions, which Amazon indicated it could accommodate. Employee returned to work in "flat sort," which required her to position packages to be scanned and processed.

Shortly after returning to that position, Employee complained of pain in her wrist that made it difficult to perform the job. Employee testified she was not allowed to take pain medication while working, further impeding her ability to perform her duties. After

2

reporting these difficulties to Mr. Holland, he scheduled a follow-up appointment for her with Dr. Eldurkar on January 5, 2016, at which time Employee complained of ongoing pain and an inability to use her arm. Dr. Eldurkar ordered an MRI and increased Employee's restrictions.

On January 7, 2016, Employee met with Mr. Holland to discuss an offer to return to work. At that time, she was presented a "Transitional Work Offer Letter," offering light duty to begin immediately in Employer's office during its normal office hours. Employee declined the offer at that time but indicated she would accept the offer on January 11, 2016. The testimony of both Employee and Mr. Holland reflects that Employee needed to arrange for childcare, as she had been working third shift so she could be home with her children during the day while her husband was at work.

Rather than contacting Mr. Holland on January 11, 2016 to accept the transitional work, Employee sent him a text message indicating she and a family member had medical appointments that day and that she would be unable to attend their scheduled meeting. Employee had an MRI of her left wrist the same day, January 11, 2016, which revealed no abnormalities other than what were believed to be chronic changes associated with a cyst. On January 15, 2016, Dr. Eldurkar modified Employee's restrictions, permitting occasional pushing or pulling with her left arm, and he referred her for a consultation with a hand specialist. Employer denied the claim for temporary disability benefits on January 21, 2016, on the basis that Employee had voluntarily declined an offer of light duty work within her medical restrictions.

Pursuant to Dr. Eldurkar's recommendation, Employee was provided a panel from which she chose Dr. Marshall Jemison who diagnosed her with radial styloid tenosynovitis of the left hand, provided an injection in the left wrist, and instructed her to limit the use of her hand and wrist. Thereafter, Employer offered light duty for Employee at a store performing work within her medical restrictions. Employee declined the offer because the work hours were during the day and because she was familiar with the area in which the store was located and felt unsafe working in that location.

Employee was then offered an alternative work assignment at a different business in a different location. Employee again declined the offer because it was scheduled during the daytime. Employee indicated to Employer that she was occasionally available to work from 10:00 a.m. to 2:00 p.m. but was otherwise unable to work during the day. She also indicated that she remained available to work from 6:30 p.m. to 5:30 a.m. No further offers of light duty were made, and Employee filed a petition for benefit determination. Following a hearing, the trial court denied Employee's request for temporary partial disability benefits and for payment of the emergency room bill. Employee has appealed.

3

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)  Violate constitutional or statutory provisions;

(B)  Exceed the statutory authority of the workers' compensation judge;

(C)  Do not comply with lawful procedure;

(D)  Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or

(E)  Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

Employee challenges the trial court's decision on three grounds. First, she contends the trial court erred in "allowing the employer to change the nature of the employment contract to avoid payment of workers' compensation benefits." Second, she asserts the trial court improperly shifted the burden of proof to her to establish Employer's offers of light duty were unreasonable. Lastly, she maintains that the trial court erred in not awarding payment of the emergency room bill. We address the dispute regarding payment of the unauthorized emergency room bill first.

An employer may risk being required to pay for unauthorized treatment if it does not provide the treatment made reasonably necessary by the work injury as required by Tennessee Code Annotated section 50-6-204(a)(1)(A). *See Young v. Young Electric Co.*, No. 2015-06-0860, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (Tenn. Workers' Comp. App. Bd. May 25, 2016); *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). However, the employer must first be given an opportunity to provide the treatment, and "[w]hether an employee is justified in seeking additional medical services to be paid for by the employer without consulting the employer depends on the circumstances of each case." *Dorris v. INA Ins. Co.*, 764 S.W.2d 538, 541 (Tenn. 1989). As observed by the Tennessee Supreme Court, an "employee [should] do no less than to

4

consult [the] employer before incurring expenses called for by the statute if the employee expects the employer to pay for them." *Id.*

Here, there is no dispute that Employee did not contact Mr. Holland prior to going to the emergency room. Employee testified it was her understanding that she was to call Mr. Holland the following morning, while Mr. Holland testified that proper procedure would have been for her to contact him immediately if she intended to seek emergency treatment. The trial court resolved this discrepancy in Employer's favor.[1] In doing so, the trial judge noted the report of injury completed by Employee reflects that she declined outside medical treatment. Although Employee testified she understood she was only declining transportation to an emergency room by ambulance, there is no mention of transportation to a hospital via ambulance. Instead, the document reflects Employee was referred to Employer, and Employer's safety manager described the correct protocol for obtaining emergency treatment after that point. As the trial court correctly observed, "[a]lthough Ms. Hackney testified she received contact information for Mr. Holland, she did not attempt to contact him or any other member of Integrity's management prior to receiving treatment at Parkridge. Instead, Ms. Hackney chose to contact Mr. Holland at approximately 3:00 a.m. *after* she was discharged from Parkridge." Under these circumstances, we decline to disturb the trial court's resolution of this issue.

Employee's remaining issues can be combined and restated as whether Employer's offers of light duty work were reasonable and Employee's refusals of those offers were unreasonable.[2] An injured worker may be entitled to temporary partial disability benefits when the temporary disability resulting from a work-related injury is not total. *See* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). As the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel has observed, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005). Temporary restrictions assigned by physicians during an injured worker's medical treatment do not establish an entitlement to temporary disability benefits if the employee is able to work without loss of income. *Long v. Mid-Tenn. Ford Truck Sales*, 160 S.W.3d 504, 511 (Tenn. 2005).

---

[1] "When the trial court has heard in-court testimony, considerable deference must be afforded in reviewing the trial court's findings of credibility and assessment of the weight to be given to that testimony." *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008).

[2] Employee asserts that the trial court "erroneously shifted the burden of proof to the employee to establish the unreasonableness of employer's accommodation of the work injury." Employee offers no explanation or argument in support of this conclusory assertion, and we decline to speculate regarding the basis for it. As stated by the Tennessee Supreme Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010).

While the concept of a meaningful return to work is more fully developed in cases involving awards of permanent disability benefits, courts use a similar analytical framework to determine whether an employee is entitled to temporary partial disability benefits in the face of an offer of light duty work. *See, e.g.*, *Kelley v. D & S Residential Holdings*, No. E2011-02392-WC-R3-WC, 2012 Tenn. LEXIS 632 (Tenn. Workers' Comp. Panel Sept. 4, 2012) (employee not entitled to temporary partial disability benefits where employee made no good faith effort to return to work despite employer's willingness to provide work within employee's restrictions); *Williams*, 2005 Tenn. LEXIS 1032 (injured worker was entitled to temporary disability benefits where she made a good faith effort to return to work but the employer did not provide work within her restrictions). When considering whether there has been a meaningful return to work, the Tennessee Supreme Court has observed:

> There will be a variety of factual situations wherein the courts will be required to construe the meaning of the words [meaningful return to work]. The ultimate resolution of their meaning will be leavened by an assessment of the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work.

*Newton v. Scott Health Care Ctr.*, 914 S.W.2d 884, 886 (Tenn. Workers' Comp. Panel 1995). If an injured worker is unable to continue working because of the injury, there generally will not have been a meaningful return to work. *Suits v. Mars*, No. E2004-02368-WC-R3-CV, 2005 Tenn. LEXIS 823, at *10-11 (Tenn. Workers' Comp. Panel Oct. 5, 2005). "However, if the employee returns to work and sometime thereafter stops working due to personal reasons or other reasons not related to the work injury, then such circumstances are considered as making a meaningful return to work." *Id.* at *11. Ultimately, "[t]he resolution of what is reasonable must rest upon the facts of each case and be determined thereby." *Newton*, 914 S.W.2d at 886.

In this case, the trial court found Employee's refusal to accept the multiple offers of modified duty made by Employer to be unreasonable for purposes of awarding temporary disability benefits. We agree. Employee's refusal was not based on a physical inability to perform the work offered as a result of her injury; nor was it in any other way related to her workplace accident. Rather, her reasons for declining the offers of employment were purely personal, i.e., she wanted to be home for the sake of her family. While this desire is certainly commendable, Employee's wish to be at home with her family is personal in nature and unrelated to her injury. Accordingly, the trial court's denial of temporary disability benefits is affirmed.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision. Nor does the trial court's decision violate any of the standards

6

set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed. The case is remanded for any further proceedings that may be necessary.

Marshall L. Davidson, III
Presiding Judge
Workers' Compensation Appeals Board



**FILED**

**July 22, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 10:05 A.M.**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Rachel Hackney | ) | Docket No. 2016-01-0091 |
| | ) | |
| v. | ) | |
| | ) | State File No. 870-2016 |
| Integrity Staffing Solutions, Inc., et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 22nd day of July, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Carmen Ware | | | | | X | cyware@thewarelawfirm.com |
| Charlie Poss | | | | | X | charlie.poss@leitnerfirm.com |
| Audrey A. Headrick, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov