FILED

February 19, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 2:52 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Stephen W. Shepherd,<br>　　　　Employee,<br>v.<br><br>Haren Construction Co., Inc.,<br>　　　　Employer,<br><br>And<br><br>Amerisure Insurance Company,<br>　　　　Insurance Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.: 2015-01-0325<br><br>State File No.: 79562-2015<br><br>Judge Thomas Wyatt |

---

## EXPEDITED HEARING ORDER DENYING ADDITIONAL MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge on January 28, 2016, upon the Request for Expedited Hearing (REH) filed by the employee, Stephen W. Shepherd, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Shepherd seeks additional medical and temporary disability benefits from Haren Construction Co., Inc. (Haren), the employer, arising from an alleged work injury to his left arm occurring July 14, 2015. (T.R. 1 at 1.)

The central legal issues are (1) whether, and to what extent, Haren is responsible to Mr. Shepherd for additional medical benefits; and (2) whether Haren had good cause to terminate Mr. Shepherd, ending his entitlement to temporary disability benefits. For the reasons set forth below, the Court finds Mr. Shepherd is not entitled to either additional medical or temporary disability benefits.

### History of Claim

Mr. Shepherd is a forty-seven-year-old resident of Delano, Polk County, Tennessee. (T.R. 1 at 1.) At the time of the alleged injury, Mr. Shepherd had worked for

1

Haren, a utility pipeline excavation company, for thirteen weeks as an equipment operator. (Ex. 1 at 25.)

In July 2015, Haren employed Mr. Shepherd as part of a crew installing utilities in Cary, North Carolina. (Ex. 1 at 1; Ex. 2 at 1.) Claude Fields, a Haren employee, supervised Mr. Shepherd. (Ex. 2 at 1.)

On July 14, 2015, Mr. Shepherd sustained a laceration to his left arm. (Ex. 1 at 1; Ex. 3.) Mr. Shepherd testified the laceration occurred when Mr. Fields dropped the bucket of an excavator onto his arm as he attempted to hook a lanyard to a piece of cable. (Ex. 2 at 1.) Mr. Fields testified he was not operating the excavator, and was ten feet away from the idle piece of equipment, when Mr. Shepherd lacerated his arm. (Ex. 6 at 1.) Mr. Fields claimed Mr. Shepherd cut his arm when he slid it against the bucket of the unmanned excavator. *Id.*

Mr. Fields drove Mr. Shepherd across the street to FastMed, an urgent care facility, for treatment. (Ex. 1 at 3-5.) A physician's assistant at FastMed treated Mr. Shepherd's injuries with stitches. *Id.* Mr. Shepherd testified the physician's assistant told him and Mr. Fields it was best that he not work, to which Mr. Fields responded he needed Mr. Shepherd to work to complete Haren's project. Mr. Fields testified he did not hear the physician's assistant say Mr. Shepherd could not work, and stated both he and Mr. Shepherd asked if Mr. Shepherd could continue working. The FastMed records indicate the physician's assistant deemed Mr. Shepherd "[f]it for duty with the following restrictions . . . keep wound clean and dry for 2 days." *Id.* at 5. The physician's assistant prescribed Ultram for Mr. Shepherd to take every six hours as needed for pain. *Id.*

Mr. Shepherd returned to work for Haren the day after his injury occurred. On the following day, July 16, 2015, he ruptured an underground gas line while digging with a backhoe. Mr. Shepherd's and Mr. Fields' testimonies differed sharply in describing how the gas line incident occurred. In fact, Mr. Shepherd's in-person testimony about the incident differed from the account he gave in his affidavit.

In his affidavit, Mr. Shepherd averred that, " I was instructed by Claude Fields, my supervisor . . . , to dig with my backhoe at a specific location . . . [that] was not marked with the indications of a gas line[.] It was at this time that I scraped the gas line causing a gas leak." (Ex. 2 at 1.) However, at the Expedited Hearing, Mr. Shepherd testified he did not hear Mr. Fields give him any instructions about digging the gas line. Instead, Mr. Shepherd testified that, at the time of the incident, he received instructions about where to dig from Greg Anthony, his "ground man." Mr. Shepherd testified that neither Mr. Fields nor Mr. Anthony told him not to dig in the area where he struck the gas line.

Mr. Fields testified that, when operating excavating equipment in the area of known underground utility lines, the procedure is to expose the underground line by

2

shovel so the equipment operator can see where the existing line is located. He testified that, on July 16, 2015, Mr. Shepherd dug to the side of an exposed gas line until he came to the end of the exposed section. Mr. Fields testified he told Mr. Shepherd to stop digging and wait until a laborer exposed the gas line by shovel. He testified Mr. Shepherd responded that he could see the gas line and kept digging with the backhoe. Shortly thereafter, Mr. Shepherd struck an unexposed section of the gas line with the blade of his backhoe. This caused a gas leak that shut the job down for several hours. Haren eventually had to pay the gas line owner $642.39 for the damage Mr. Shepherd caused. (Ex. 9.)

Mr. Fields' in-person testimony was consistent with that given in his affidavit. Mr. Fields' affidavit stated, "I instructed Mr. Shepherd to get off the backhoe where a gas line had been located and allow Jason Troval to clean the remainder of it with a shovel. Mr. Shepherd refused my order . . . and continued to operate the backhoe which resulted in striking the gas line and causing it to rupture." (Ex. 6 at 2.)

Mike Bell, a field mechanic for Haren, testified he heard Mr. Fields tell Mr. Shepherd to stop digging to allow a laborer to shovel around the gas line. He further testified that Mr. Shepherd said "I can see the gas line" and kept on digging. Shortly thereafter, he struck the gas line with the blade of his backhoe.[1]

The Haren crew worked on the Cary, North Carolina job through Friday, July 17, 2015. On Saturday, July 18, Mr. Fields called Mr. Shepherd at home to terminate him for striking the gas line. Prior to terminating Mr. Shepherd, Mr. Fields sought permission to do so from Mike Harrell, Haren's safety manager. Mr. Harrell gave Mr. Fields authorization to terminate Mr. Shepherd.[2]

The following Monday, Mr. Shepherd spoke to Haren's president, Evan Haren, at Haren's office. In his affidavit, Mr. Shepherd asserted Mr. Haren told him "there would be no Workers' Compensation coverage and that [he] knew nothing about the injury." (Ex. 2 at 2.) At the Expedited Hearing, Mr. Shepherd testified Mr. Haren told him he would get back in touch with him about who would deal with his arm injury. Mr. Haren testified he told Mr. Shepherd he would investigate and get back in touch with him only if the company's decision on the firing changed. He also testified that Mr. Shepherd did not mention this injury, or who would treat it, during their conversation.

Mr. Haren upheld the decision to terminate Mr. Shepherd. An employee of Haren

---

[1] In his affidavit, Mr. Bell recounted Mr. Fields' instructions to the laborer about exposing the gas line. (Ex. 7 at 1.) He did not specifically relate any comment made by Mr. Shepherd, but averred "Mr. Shepherd disobeyed his order." *Id.*

[2] During the Expedited Hearing, Mr. Harrell testified Mr. Shepherd's termination was justified because he was insubordinate when he failed to follow Mr. Fields' direct order not to dig until the gas line was further exposed.

3

wrote the following notation on the Separation Notice it filed with the State of Tennessee: "Discharged—UNABLE TO PERFORM WORK DUTIES REQUIRED." Mr. Fields testified that he told the lady who completed the Separation Notice that he terminated Mr. Shepherd because he could not operate Haren's equipment to his satisfaction.

Mr. Shepherd's wife removed the sutures from his arm. On September 8, 2015, Mr. Shepherd saw Dr. James P. Stone, an orthopedic surgeon in Cleveland, Tennessee, for treatment of his arm. (Ex. 1 at 22.) Haren did not pay for this visit and Mr. Shepherd did not testify that he contacted anyone at Haren for authorization to see Dr. Stone. Mr. Shepherd testified Dr. Stone took him completely off work following the September 8 visit.

Through the efforts of his attorney, Haren's workers' compensation carrier authorized Dr. Stone to treat Mr. Shepherd's arm injury after the initial visit. (Ex. 1 at 1.) Because Dr. Stone took Mr. Shepherd completely off work beginning September 28, 2015, Haren's carrier paid temporary total disability benefits at the stipulated rate of $523.61 beginning September 28. *Id.*

Mr. Shepherd next saw Dr. Stone on October 28, 2015. *Id.* at 14. Dr. Stone released him to return to work with restrictions of no reaching, pulling, tugging, or lifting greater than five pounds with his left arm. *Id.* at 13. Haren terminated temporary disability benefits on October 28, 2015 (*Id.* at 1), claiming it would have returned Mr. Shepherd to light duty work, including performing painting or clean-up work around worksites, if it had not terminated him for cause.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

4

*Mr. Shepherd Is Not Entitled to Additional Temporary Disability Benefits.*

Temporary restrictions assigned during the period an employee undergoes treatment for a work injury do not automatically entitle the employee to temporary partial disability benefits. If, during the period of temporary restriction, the employee could have performed work other than the pre-injury job without loss of income, the employee is not entitled to temporary partial disability benefits. *See Long v. Mid-Tennessee Ford Truck Sales,* 160 S.W.3d 504, 511 (Tenn. 2005); *Vinson v. Firestone Tire & Rubber Co., 655 s.W.2d 931,* 932-33 *(Tenn. 1987).*

The issue before the Court, thus, is whether the evidence introduced at the Expedited Hearing established that, at a hearing on the merits, Mr. Shepherd will likely prevail in establishing (1) that Haren did not terminate him for good cause and, (2) that Haren never intended to offer him a light duty position that accommodated his work-related restrictions. *McCord, supra,* at *9. If Mr. Shepherd failed to establish the above positions, Haren does not owe him temporary partial disability benefits. *See Long, supra,* at 511: *see also Jones v. Crencor Leasing and Sales,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *8 (Tenn. Workers' Comp. App. Bd. December 11, 2015), citing with approval *Carter v. First Source Furniture Group,* 92 S.W.3d 367, 371-372 (Tenn. 2002) (holding that, "an employer should be permitted to enforce workplace rules without being penalized in a workers' compensation case.").[3]

Mr. Shepherd argued Haren used the gas line rupture as a pretext to terminate him. He also argued that he had no work skills that would allow Haren to assign him duties in accommodation of the restrictions on his left upper extremity. Haren countered it terminated Mr. Shepherd for striking the gas line and other inadequacies he exhibited in operating its equipment. Haren claimed it would have assigned him to light duty within his restrictions if he had not been terminated for cause.

In order to decide the first prong of the issue before it, the Court must determine: "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Ingram v. Heads Up Cutting Ctr.,* No. M2012-00464-WC-R3-WC, 2013 Tenn. LEXIS 338, at *20 (Tenn. Workers' Comp. Panel Apr. 10, 2013); *see also Durham v. Cracker Barrel Old Country Store, Inc.,* No. E2008-00708-WC-R3-WC, 2009 LEXIS 3, at *9

---

[3] The *Carter* opinion arose in the context of a claim for reconsideration of a capped award of permanent disability benefits following the employee's termination. The Court finds the principle underlying the decision in *Carter,* i.e., that an employee with a capped permanent disability benefits award is not entitled to an additional award when terminated for cause, is equally applicable to a claim for temporary partial disability benefits. *See also Phillips v. Deroyal Indus.,* No. E2001-01655-WC-R3-CV, 2001 Tenn. LEXIS 324, at *8-9 (Tenn. Workers' Comp. Panel July 8, 2002, upholding a denial of temporary partial disability benefits when, along with one other reason, it found the trial court "was satisfied the employer had valid reasons to terminate Mr. Phillips for failure to report to work at the light duty assignment."

(Tenn. Workers' Comp. Panel Jan. 5, 2009). In consideration of the evidence introduced at the Expedited Hearing, the Court finds Haren will likely prevail at a hearing on the merits in establishing that Mr. Shepherd's inadequate performance in operating its equipment constituted the true motivation for his termination.

Mr. Shepherd focused on two points in support of his position that his termination for damaging the gas line was pretextual. First, he pointed out that Haren did not terminate Mr. Fields when he caused a delay of the Cary, North Carolina job while the local cable utility repaired buried cable lines Mr. Fields unearthed while digging with an excavator. Second, he relied on Haren's president's testimony that he would not terminate an employee for making "an honest mistake." The Court finds neither of these arguments offer him relief.

Haren's failure to terminate Mr. Fields does not prove Mr. Shepherd's termination was pretextual. Mr. Fields testified without rebuttal he dug up unmarked cable lines, while Mr. Shepherd damaged a gas line he knew existed while digging in disobedience to instructions not to dig until a laborer further exposed the line. The Court finds the circumstances of the two incidents are completely different, and Haren's decision to keep Mr. Fields and fire Mr. Shepherd does not prove an improper motivation.

The Court likewise finds that Mr. Haren's comment about not terminating employees for honest mistakes does not support a finding Mr. Shepherd's termination was improperly motivated. Mr. Haren testified about not terminating an employee for an "honest mistake" in response to Mr. Shepherd's attorney's question whether he would consider it misconduct if Mr. Shepherd ruptured a gas line in an area where Mr. Fields directed him to dig. Mr. Fields and Mr. Bell testified positively and without hesitation that Mr. Shepherd hit the gas line while digging in contravention to Mr. Fields' instruction not to dig. Mr. Shepherd testified inconsistently on the issue of whether Mr. Fields instructed him to dig at the pertinent time. In view of the above, the Court finds Mr. Fields and Mr. Bell testified credibly on this issue and, as such, finds Mr. Shepherd's action in hitting the gas line was not an "honest mistake", as Mr. Shepherd' question defined that term for Mr. Haren.[4]

The Court finds Haren terminated Mr. Shepherd for cause. The Court's decision on this point makes it unnecessary to determine if Haren would have offered Mr. Shepherd a light duty position had it not terminated him. Because Haren terminated him for cause, Mr. Shephered is not entitled to additional temporary disability benefits.

---

[4] Haren's employee handbook, which Mr. Shepherd testified he read and signed, provides, "[u]nsafe, destructive, careless, negligent, or improper use or operation of equipment may result in disciplinary action up to and including termination of employment." (Ex. 5 at 33.)

*Mr. Shepherd Is Not Entitled to Additional Medical Benefits.*

Mr. Shepherd seeks to recover the costs of the initial treatment visit with Dr. Stone. He testified he saw Dr. Stone on his own because Haren did not get back in touch with him about treatment of his work injury. Mr. Shepherd did not testify he contacted Haren to attempt to obtain authorization to see Dr. Stone.

The Supreme Court held in *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654 658 (Tenn. 1986), that the Workers' Compensation Law "makes it clear that the intent [of the Legislature] . . . was for the employee to certainly do no less than consult his employer before incurring the expenses called for by the statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy." In compliance with the above-quoted authority, the Court finds Mr. Shepherd is not entitled to reimbursement for the costs of the initial visit with Dr. Stone because he did not establish that the he asked Haren for authorization to see Dr. Stone before utilizing his services.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Shepherd's request for additional medical and temporary disability benefits is denied.

2. This matter is set for a telephonic Initial (Scheduling) Hearing Status on **March 24, 2016, at 9:00 a.m. Eastern Time.** The parties shall call 855-747-1721 (toll-free) or 615-741-3061 to participate in the hearing.

**ENTERED this the 19th day of February, 2016.**

_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

Status Hearing:

A Status Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims. You must call 855-747-1721, toll-free, or at 615-741-3061 to**

**participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

The Court reviewed the following documents and designates these documents as the Technical Record:[5]

1. PBD, filed October 2, 2015;
2. DCN, filed November 5, 2015;
3. REH, filed December 18, 2015;
4. Employee's Position Statement, filed with the PBD on October 2, 2015; and
5. Letter from counsel for Employer, dated October 14, 2015.

The Court admitted the following documents into evidence at the Expedited Hearing and reviewed each document in reaching its decision in this claim:

1. Stipulation, including records of FastMed Urgent Care; records of Dr. James P. Stone/Chattanooga Orthopaedic Group, P.C.; and Wage Statement (C-41);
2. Affidavit of Stephen Shepherd;
3. Photograph of Mr. Shepherd's injury;
4. Separation Notice;
5. Haren Construction Co., Inc. Employee Handbook;
6. Affidavit of Claude Fields;
7. Affidavit of Mike Bell;
8. Affidavit of Evan Haren, with attached notes;
9. Bill from PSNC Energy;
10. Omitted;
11. Statement of Workers' Compensation Benefits Due compiled by counsel for Mr. Shepherd; and
12. Photographs of the worksite where Mr. Shepherd was injured.

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 19th day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| William J. Brown, Attorney | | | X | wjb@vollaw.com |
| Leslie Bishop, Attorney | | | X | lbishop@lewisthomason.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11