FILED

March 23, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:43 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: David Ricketts**

**EMPLOYER: Dana Holdings Corporation**

**DOCKET #: 2014-07-0024**
**STATE FILE #: 69271-2014**
**DATE OF INJURY: August 4, 2014**

**INSURANCE CARRIER/TPA: Security Risk Services/Sedgwick**

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on March 11, 2015, upon the Request for Expedited Hearing filed by David Ricketts (Mr. Ricketts), the Employee, on February 12, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the Employer, Dana Holdings Corporation (Dana), is obligated to provide additional temporary disability benefits.

The undersigned Workers' Compensation Judge conducted a telephonic Expedited Hearing on March 11, 2015. Charles L. Hicks represented Mr. Ricketts. Terri L. Bernal represented Dana. Considering the applicable law, the evidence submitted, argument of counsel, and the technical record, this Court finds that Mr. Ricketts is not entitled to the requested benefits.

## ANALYSIS

### Issue

*Whether Mr. Ricketts is entitled to temporary benefits for the period beginning August 27, 2014, and continuing until his placement at maximum medical improvement.*

### Evidence Submitted

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD)
- Dispute Certification Notice (DCN)
- Request for Expedited Hearing (REH)

The Court did not consider attachments to the above filings not admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings and

1

their attachments as allegations unless established by the evidence.

The Court admitted the following documents into evidence:

Exhibit 1: Medical Records of Dr. Blake Chandler (August 27, 2014—February 23, 2015, 23 pages)
Exhibit 2: Wage Statement (AWW: $ 1,054.75 /Comp. Rate: $ 703.20)
Exhibit 3: Affidavit of Andrea Gooch
Exhibit 4: Paris TN Plant Rules and Safety Guidelines (for identification only)
Exhibit 5: Affidavit of Jason Almand

## History of Claim

Mr. Ricketts worked for Dana as a maintenance technician for four and one-half years (4 ½) years. On August 4, 2014, Mr. Ricketts injured his left shoulder. Dana accepted the claim as compensable and authorized medical care with Dr. Blake Chandler. Mr. Ricketts first saw Dr. Chandler on August 27, 2014. Dr. Chandler diagnosed rotator cuff tendonitis and recommended modified duty "with no use of [the left] extremity." (Ex. 2 at 2). After his injury and prior to seeing Dr. Chandler, Mr. Ricketts worked regular duty at Dana.

On August 27, 2014, Mr. Ricketts worked at Dana on the night shift, with scheduled hours of 10:45 PM until 7:45 AM. His scheduled "lunch break" was at approximately 4 AM. Near his scheduled 4 AM lunch break, he left the building where he was working and "went to building twenty-six" to "meet the new maintenance guy." . Mr. Ricketts did not find the new employee so he went to his vehicle to "eat dinner." His vehicle was parked in a lot between the two buildings. He testified that most employees who smoke eat in their vehicles.

On August 27, Mr. Ricketts failed to "clock out" when taking his lunch break. He was required to do so, but he was "not thinking." He ate lunch in his vehicle and then slept for some period. He testified that it was common for him and others to sleep during their lunch break. He claims his total time off the clock approximated his allotted 30-minute break. When he realized that he failed to clock out, Mr. Ricketts reentered the plant and did so. He then performed work while "off the clock" to make up the time he took for lunch and during which he was technically "clocked-in."

It was later determined that Dana employees witnessed Mr. Ricketts asleep in his vehicle at a time when his whereabouts were questioned. After learning of the witnesses seeing Mr. Ricketts asleep, Dana performed an investigation. After the investigation, Dana terminated Mr. Ricketts on September 3, 2014.

Mr. Ricketts testified that Dana advised him the grounds for his termination were that he slept on the job and worked while not properly clocked in. However, he testified that he had "no intent" to falsify his clock entries, and that it would not have benefitted him in any way to do so. "It was just the order I did it that was wrong" and his failure to clock out before his break was merely "absent-mindedness." Further, it was common for him to be called in from a break to work on machinery while he was "clocked out." He was aware of others who were not

2

terminated for sleeping on breaks.

On cross-examination, Mr. Ricketts confirmed Dana told him that the basis for his termination was improperly clocking in and out on August 27, 2014. He agreed that he was clocked in when he slept in his car on the night in question. He also acknowledged receipt of the guidelines and rules for employee conduct. However, he denied that there were policies prohibiting working while off the clock. To the contrary, his supervisor called him "off dinner…. 100's and 100's of times," requiring him to work off the clock. When this occurred, his supervisor would "fix" the recorded time the next day.

Ms. Andrea Gooch testified she is the Human Resources Manager for Dana and that her responsibilities include hiring employees and investigating employee misconduct. She also has the "ultimate authority" to terminate an employee. Dana provides new employees a handbook containing its policies and procedures. Dana addresses the policies regarding terminable offenses with all new hires. Ms. Gooch confirmed that Mr. Ricketts received a copy of the employee handbook.

On August 27, 2014, Ms. Gooch received a phone call that Mr. Ricketts was sleeping on the job. Ms. Gooch began her investigation on August 28, 2014. Witnesses confirmed Mr. Ricketts was sleeping while clocked in. Ms. Gooch reviewed time clock records that did not match the times Mr. Ricketts claimed he was working. Ms. Gooch determined that Mr. Ricketts tried to "disguise the fact that he did not clock out earlier." Ms. Gooch terminated Mr. Ricketts on September 3, 2014. Ms. Gooch further testified that Dana employees are neither permitted to work nor allowed on the plant floor if they are clocked out Ms. Gooch explained that other employees were not terminated for oversleeping because the employees were clocked out at the time they overslept. Dana terminated other employees previously for sleeping on the job and for committing time clock errors. Dana followed the union guidelines in its termination of Mr. Ricketts. On cross-examination, Ms. Gooch testified that termination is a viable option for the offenses committed by Mr. Ricketts.

Jason Almand, the Employee Health and Safety Manager, is directly involved with Dana's workers' compensation program. Mr. Almand testified that it is Dana'spolicy to "try our very best" to keep an injured employee earning "100 percent pay." Dana is capable of accommodating an employee restricted to use of one arm. Dana would have accommodated Mr. Ricketts but for his termination for cause. On cross-examination, Mr. Almand denied speaking to Mr. Ricketts in an inappropriate way or delaying the provision of a panel as implied in the questions of Mr. Ricketts' counsel.

On rebuttal, Mr. Ricketts testified it was common for him to move between buildings at work. He denied being off the clock for more time than he keyed. He also denied the policy book forbidding working off the clock.

Mr. Ricketts continued to treat with Dr. Chandler after his termination. An MRI revealed a torn labrum for which Dr. Chandler performed surgery on October 24, 2014. Dr. Chandler continued the modified duty restrictions of no use of the extremity through the last documented visit of February 23, 2015. Mr. Ricketts has not worked since his termination.

3

## Mr. Ricketts' Contentions

Mr. Ricketts contends he is entitled to temporary *total* disability benefits (TTD) because he is unable to work due to the restrictions from Dr. Chandler. He argues his termination from Dana should not affect his entitlement to TTD because he did not intentionally do anything wrong. He inadvertently failed to clock out and later tried to "balance out" his time by working while off the clock. Dana routinely required him to work off the clock when called in from breaks to do so.

Dana's policy regarding failing to properly clock out is not a "hard and fast rule." The action "may" result in termination but termination is not automatically required. Dana made an exception for another employee who was sleeping on the job. The time clock violation is an "extremely technical matter" and it is "more than a coincidence" that his termination occurred so soon after he reported his work injury.

## Dana's Contentions

Dana contends Mr. Ricketts is not entitled to any temporary benefits. It paid Mr. Ricketts' his regular wages for the weeks following his August 4, 2014 injury until August 27, 2014, his last day worked. Dana terminated Mr. Ricketts for cause on September 3, 2014 because he falsified company documents by improperly clocking in and out on August 27. Though being observed sleeping was the catalyst for the investigation, the very act of sleeping on the job while clocked in on August 27 was a terminable offense under Dana's policies. Dana had modified duty work available within Mr. Ricketts' restrictions at all times for which he seeks temporary benefits.

## Findings of Fact and Conclusions of Law

### Standard Applied

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. The employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014).

### Factual Findings

Mr. Ricketts sustained a compensable shoulder injury on August 4, 2014. Dr. Chandler, an approved provider, placed him on restrictions of no use of the left arm as of August 27, 2014. Dana paid Mr. Ricketts his regular wages through August 27, 2014.

Dana terminated Mr. Ricketts for cause on September 3, 2014 because he was sleeping while "clocked in." He later attempted to cover his failure to clock out by "working out" the missed time and re-clocking his time on the job. Dana followed and enforced its workplace rules by terminating Mr. Ricketts for falsification of company documents and sleeping on the job.

But for his termination for cause, Dana could have accommodated Mr. Ricketts' restrictions, allowing him to work light duty, during the relevant period..

*Application of Law to Facts*

The sole issue is whether Mr. Ricketts is entitled to additional temporary disability benefits. He characterizes the benefits requested as temporary *total* disability benefits.

Temporary total disability (TTD) benefits are payable to an injured employee who is totally disabled from working by his injury and while he is recovering as far as the nature of the injury permits. *Cleek v. Wal-Mart Stores, Inc.,* 19 S.W.3d 770, 776 (Tenn. 2000). To establish entitlement to TTD, the employee must show he was (1) *totally disabled* from working by a compensable injury; (2) that there was a causal connection between the injury and his inability to work; and (3) the duration of that period of disability." *Id.* (Emphasis added). When an employee demonstrates the ability to return to work or attains MMI, then TTD benefits are terminated. *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978). In this case, Mr. Ricketts was not totally disabled during the relevant period but instead had restrictions of no use of his right arm. Hence, he is not eligible for TTD benefits for the period at issue. Notwithstanding, Mr. Ricketts still may be eligible for temporary partial disability benefits.

Temporary partial disability refers to the time during which the injured employee is able to resume some gainful employment but has not yet reached maximum recovery. *Williams v. Saturn Corp.,* No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, *3 (Tenn. Workers' Comp. Panel, November 15, 2005). Tennessee Code Annotated section 50-6-207(2)(B) states:

> In all cases of temporary partial disability for claims with a date of injury on or after July 1, 2014, the compensation shall be sixty-six and two-thirds percent (66 2/3%) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition.

Temporary restrictions assigned during ongoing medical treatment do not entitle the employee to continued temporary disability benefits if he was able to perform work other than his pre-injury job without a loss of income. *See, Long v. Mid-Tennessee Ford Truck Sales,* 160 S.W.3d 504, 511 (Tenn. 2005); *Vinson v. Firestone Tire and Rubber Co.,* 655 S.W.2d 931, 932-33 (Tenn. 1983). In this case, the Court finds Mr. Ricketts did not work during his period of disability because of his restrictions. However, the Court finds that he could have worked for Dana but for his termination for cause.

The Tennessee Supreme Court has held that, "an employer should be permitted to enforce

5

workplace rules without being penalized in a workers' compensation case." *Carter v. First Source Furniture Group,* 92 S.W.3d 367, 371 (Tenn. 2002). Thus, an injured employee is not entitled to temporary disability benefits if he is terminated for cause *and* the employer reasonably would have been able to provide modified duty within the restrictions assigned.

In this case, Mr. Ricketts argues that his termination was improper. Mr. Ricketts particularly emphasized the rude demeanor and apparent consternation of Mr. Almand, both when he reported the injury and during the two (2) weeks before he received a panel. His counsel cross-examined Mr. Almand as to Mr. Ricketts' perceived treatment by Mr. Almand. Mr. Ricketts cited an example that Dana previously refrained from firing an employee for the same offense, sleeping during a lunch break, and implied his own termination followed curiously close to his reporting of his work injury. He knew of other employees who worked while clocked out on break and who worked to make up for time off the clock. Moreover, Mr. Ricketts contends his actions were not willful but merely "an absence of mind" and undeserving of his termination.

Despite the vigorous advancement of his position, Mr. Ricketts cannot prevail. First, Ms. Gooch explained her thorough investigation of the events leading to his termination. She interviewed numerous co-employees as to the circumstances surrounding the events in the early morning hours of August 27, 2014. She reviewed the time entries of Mr. Ricketts' clocking in and out. Her testimony establishes that Dana maintained a policy that immediate discharge is a viable option for Dana to exercise when an employee falsifies company documents. Second, Mr. Ricketts' actions in clocking in at a later time and different location fit the criteria for false documentation despite his plea that such action was mere absent-mindedness. Technically, Mr. Ricketts also was "sleeping on the job" because he failed to clock out before retiring to his personal vehicle to nap. Likewise, Ms. Gooch explained the prior employee's situation was distinguishable; sleeping during a lunch break is permissible but doing so when clocked in is not. Finally, Mr. Ricketts himself admits in his own direct testimony that "the order I did it in was wrong." He tried to "make up for" his dereliction to time keeping by attempting an improper clocking procedure. The Court finds the principles of *Carter* applicable here, and Dana was within its rights to enforce its workplace rules by terminating Mr. Ricketts.

Having found that Dana terminated Mr. Ricketts for cause, the Court turns to the second element of analysis for a denial of TPD benefits; specifically Dana's ability to accommodate Mr. Ricketts' modified duty restrictions. Mr. Almand both stated in his affidavit and testified credibly at the hearing that Dana had modified duty available to Mr. Ricketts at all times relevant, namely, August 27, 2014 through the date of the hearing. But for his termination for cause, Mr. Ricketts might have worked at Dana under its policy of providing modified duty, including modified duty with the use of only one arm. The fact that Mr. Ricketts worked at Dana at his regular wage from the date of injury until his termination, despite being limited in what he could do with his left arm, bolsters Mr. Almand's testimony. The Court finds the preponderance of the evidence supports Dana's contention that it could have accommodated Mr. Ricketts but for his termination for cause. Therefore, Mr. Ricketts' claim for temporary disability must fail.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Ricketts' claim against Dana for the requested temporary benefits is denied.

2.  This matter is set for Initial Hearing on June 17, 2015, at 9:00 AM Central Time.

**ENTERED this the 23rd day of March, 2015.**

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Allen Phillips, Court of Workers Compensation. You must dial in at 731-422-5263 or 855-543-5038 toll free to participate in your scheduled conference.**

**Please Note:  You must call in on the scheduled date/time to participate.  Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Request for Appeal upon the opposing party.

4.  The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

5.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3)

7

business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 23rd day of March, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Charles L. Hicks | | | | | X | Larry_hickslaw@bellsouth.net |
| Terri L. Bernal | | | | | X | tbernal@wimberlylawson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims