FILED

February 22, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 1:26 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| DAVID E. TUCKER, **Employee,** ) | Docket No.: 2015-01-0281 |
| v. ) | State File No.: 51513-2015 |
| STAR TRANSPORTATION, **Employer,** ) | Judge Thomas Wyatt |
| And ) | |
| NEW HAMPSHIRE INS. CO., **Carrier.** ) | |

---

## EXPEDITED HEARING ORDER DENYING ADDITIONAL TEMPORARY PARTIAL DISABILITY BENEFITS
### (*REVIEW OF THE FILE*)

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by the employee, David E. Tucker, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Tucker requested the Court render its decision based upon a review of the file without an evidentiary hearing. (T.R. 3 at 1.) Star Transportation, the employer, agreed to a file-review determination of the issues between the parties. (T.R. 5 at 1.)

On February 1, 2016, the Court issued a Docketing Notice to both parties. (T.R. 6.) In response, both parties filed position statements in which neither objected to the Court considering all information contained in the Clerk's file in making its determination. (T.R. 7; T.R. 8.)

The Court finds that it needs no additional information to determine whether Mr. Tucker is likely to prevail at a hearing on the merits of his claim to temporary partial disability benefits. Accordingly, pursuant to Rule 0800-02-21-.14(1)(c) (2015) of the Tennessee Compilation Rules and Regulations, the Court renders its decision in this

1

Expedited Hearing upon a review of the file without an evidentiary hearing.

The present focus of the claim is Mr. Tucker's request for temporary partial disability benefits. (T.R. 7 at 2-3.) The central issue is whether Mr. Tucker is entitled to temporary partial disability benefits when he failed to report from his home in Colquitt, Georgia, to Star's terminal in Lavergne, Tennessee for light-duty work that accommodated his restrictions. (T.R. 4; T.R. 7.) For the reasons set forth below, the Court finds that, at a hearing on the merits, Mr. Tucker is not likely to prevail in establishing his entitlement to additional temporary partial disability benefits.

## History of Claim

Mr. Tucker is a fifty-seven-year-old resident of Colquitt, Georgia. (T.R. 1 at 1.) He worked eight weeks as an over-the-road truck driver for Star prior to suffering injury to his cervical spine and right shoulder on July 1, 2015. (Ex. 6; T.R. 1 at 1.) The injury occurred when Mr. Tucker reached under his truck and pulled a lever/hitch pin to slide the tandem on his trailer. (Ex. 5; Ex. 7 at 1; Ex. 12 at 1.) Star and its carrier accepted the claim as compensable.

Mr. Tucker first received treatment for his work injury on July 3, 2015, at Thomaston Family Medical Center near his home in Colquitt, Georgia. (Ex. 10 at 1.) Subsequently, Star provided authorized care for his injury at Middle Tennessee Occupational and Environmental Medicine, Inc. in Lavergne, Tennessee. (Ex. 11.) He first received authorized specialized care from Dr. Timothy J. Steinagle, an orthopedic surgeon with Tennessee Orthopedic Alliance, on August 21, 2015. (Ex. 12 at 1.)

During the initial treatment visit with Mr. Tucker, Dr. Steinagle reviewed an MRI of the right shoulder performed August 7, 2015, which revealed degenerative narrowing, or arthrodesis, of the right acromioclavicular joint and tendinosis without evidence of tearing in the right rotator cuff. (Ex. 12 at 4.) Dr. Steinagle recommended physical therapy and an injection. *Id.* Following an office visit on September 11, 2015, Dr. Steinagle referred Mr. Tucker to a spine specialist to determine if a neck injury was causing his continued right shoulder and right arm symptoms. *Id.* at 8. Dr. Steinagle stated Mr. Tucker should remain under work restrictions until seen by the referring physician.[1] *Id.*

Mr. Tucker asked for, and Star offered, a panel consisting of three spine surgeons near his home in south Georgia from which to select a physician pursuant to Dr. Steinagle's referral. (Ex. 1.) Mr. Tucker selected Dr. Matthew Lee, an orthopedic surgeon in Tallahassee, Florida, from the panel. *Id.* Mr. Tucker first saw Dr. Lee on

---

[1] Following the previous office visit, Dr. Steinagle released Mr. Tucker to return to work with restrictions of occasional overhead use of his right arm; no lifting over fifteen pounds; and, no driving. (Ex. 12 at 7.) The September 11, 2015 office note does not indicate Dr. Steinagle changed the previous restrictions. *Id.* at 8-9.

November 11, 2015, at which time Dr. Lee completed a Florida workers' compensation form. (Ex. 19 at 2.) In the form, Dr. Lee diagnosed Mr. Tucker with cervical radiculopathy and opined Mr. Tucker's neck injury was work-related. [2] *Id.* at 1-2. The form also indicated that Dr. Lee placed limitations on Mr. Tucker's lifting and the rotation and flexion of his right arm. *Id.* at 2. He also restricted Mr. Tucker to no driving or riding for more than two hours per day. *Id.*

Based on the results of a cervical MRI, Dr. Lee diagnosed Mr. Tucker with cervicalgia and radiculitis caused by displacement of cervical intervertebral discs. (Ex. 13 at 1-2.) Dr. Lee recommended cervical discectomy and fusion surgery of the C4-C5 and C5-C6 levels of Mr. Tucker's neck. *Id.* A utilization review examiner deemed the surgery medically necessary. (Ex. 15.) Star has authorized the surgery recommended by Dr. Lee. (Ex. 8 at 1.)

Mr. Tucker performed available light-duty work at Star's terminal in Lavergne, Tennessee from July 15, 2015, until either August 24, 2015, according to Star's vice-president in charge of workers' compensation claims; September 24, 2015, according to Mr. Tucker; or September 27, 2015, according to an adjuster for Star's carrier. (Ex. 7 at 1; Ex. 8 at 2; Ex. 9 at 2.) In his affidavit, Mr. Tucker stated, "I last worked for my employer Star Transportation on September 24, 2015 and I have been unable to continue driving 900 miles per week to stay in a motel in LaVergne, TN to work light duty at Star." *Id.*

Star's adjuster stated in her affidavit, "[Mr. Tucker] never returned to the terminal to work since [September 27, 2015]. He apparently decided to decline the offer of light-duty work and go back to his home in south Georgia." (Ex. 8 at 2.) Star's attorney contends Mr. Tucker's refusal to return to Tennessee to perform available light duty operated as an abandonment of his job at Star. (T.R. 8 at 2.)

Mr. Tucker filed his PBD to recover temporary partial disability benefits since the last day he worked at Star. (T.R. 1.) When mediation failed to resolve the issue, the mediator assigned to the claim certified the issue to this Court. (T.R. 2.)

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer.

---

[2] Dr. Lee based his causation opinion on Florida's definition that an incident is work-related if a physician determines it was the major contributing cause of the employee's current condition, need for treatment, and functional limitations. (Ex. 19 at 1.) Interestingly, the Florida form requires that the physician find the subject incident contributed more than fifty percent to the present condition before opining it is the major contributing cause. *Id.*

3

Tenn. Code Ann. § 50-6-116 (2015). In general, an employee bears the burden of proof on all *prima facie* elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, at an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

Tennessee Code Annotated section 50-6-207(2)(B) (2015) provides for temporary partial disability benefits, setting the amount of temporary partial disability benefits at "sixty-six and two-thirds percent (66 2/3%) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition." However, temporary restrictions assigned during the period an employee undergoes treatment for a work injury do not automatically entitle the employee to temporary partial disability benefits. If, during the period of temporary restriction, the employee could have performed work other than the pre-injury job without loss of income, the employee is not entitled to temporary partial disability benefits. *See Long v. Mid-Tennessee Ford Truck Sales,* 160 S.W.3d 504, 511 (Tenn. 2005); *Vinson v. Firestone Tire & Rubber Co.,* 655 S.W.2d 931, 932-933 (Tenn. 1983).

In *Wilkins v. Kellogg Co.,* 48 S.W. 3d 148, 154 (Tenn. 2001), the Supreme Court found that a reasonable, fair interpretation of the policy goals underlying workers' compensation includes enforcement of an employer's light-duty program designed to help injured employees become fully rehabilitated so they can resume their former jobs.[3] Numerous Tennessee appellate opinions addressing the issue of whether an employee's termination entitles him or her to additional permanent disability benefits couch the dispositive issue in terms of the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work. *See, e.g. Newton v. Scott Health Centers,* 914 S.W. 2d 884, 886 (Tenn. Workers' Comp. Panel 1995). The Court finds the underlying principles outlined in those opinions applicable to the issue in this claim.

Mr. Tucker contends he reasonably declined the light-duty work Star offered him 450 miles from his home in south Georgia due to Dr. Matthew Lee's restriction that he

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

drive or ride no more than two hours per day.[4] Star counters that, from the outset, it reasonably sought to accommodate the distance issue by paying for Mr. Tucker's lodging in Tennessee and by paying him mileage to drive home on weekends. (Ex. 8 at 2.) Star contends its offer to pay for Mr. Tucker to fly home once a month reasonably accommodated Dr. Lee's restriction that he not drive or ride more than two hours per day. *Id.*

The Court notes that Mr. Tucker's job as an over-the-road truck driver for Star, by definition, required him to frequently work away from home. The Court also notes that, initially, Mr. Tucker agreed to accept treatment of his injury from physicians located near Star's terminal in Lavergne, Tennessee and to participate in Star's light-duty program in Tennessee. Mr. Tucker did not rebut Star's contention that it was he who insisted on transferring his authorized treatment to a physician in Florida after Dr. Steinagle referred him for treatment by a spine specialist.

The Court recognizes that Dr. Lee's restriction technically precluded Mr. Tucker from utilizing a ground vehicle to travel home every weekend.[5] However, the Court also finds that Tennessee law favors enforcement of employers' light-duty work programs even when those programs inconvenience the employee. The Court finds that Star's willingness to provide Mr. Tucker authorized care in Tennessee and, to pay to fly Mr. Tucker home once a month even after he insisted on transferring his authorized care to a physician located near his home in south Georgia, constitutes a reasonable approach to the return-to-work issue here. The Court finds Mr. Tucker's failure to accept the offered light-duty position was less reasonable than the position Star took to resolve the distance issue that confronted the parties in this claim. Accordingly, the Court finds that, at a hearing on the merits, Mr. Tucker is not likely to prevail in establishing his claim to additional temporary partial disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Tucker's claim for additional temporary partial disability benefits is denied at this time.

2. This matter is set for an Initial (Scheduling) Hearing on **April 15, 2016, at 9:30 a.m. Eastern Time. The parties shall call in at 855-747-1721 (toll-free) or at 615-741-3061.** A party's failure to call in at the scheduled time may result in the Court making decisions without the absent party's participation.

---

[4] Prior to the imposition of Dr. Lee's restriction, Dr. Steinagle restricted Mr. Tucker from all driving although he did not indicate whether such a restriction applied to riding in a vehicle. (Ex. 12 at 7.) Dr. Steinagle indicated Mr. Tucker should remain under the same restrictions until seen by the referring physician. *Id.* at 8-9.

[5] The Court notes that Mr. Tucker travelled from Lavergne, Tennessee to south Georgia, and back again, while under Dr. Steinagle's restriction that he not drive. (Ex. 12 at 7.) Even if Dr. Steinagle did not intend that the restriction apply to riding in a vehicle, Mr. Tucker's travel pattern while under Dr. Steinagle's care indicated he physically endured the trips irrespective of what restriction a physician might place on his activities.

**ENTERED** this the 22nd day of February, 2016.

_____

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

Status Hearing:

A Status Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate.**

**Please Note:** You must call in on the scheduled date/time to participate. **Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is

practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

The Court reviewed the following documents and designates these documents as the Technical Record:

1. Petition for Benefit Determination, filed November 23, 2015;

2. Dispute Certification Notice, filed January 6, 2016;

3. Request for Expedited Hearing, filed December 1, 2015;

4. Employer's mediation Position Statement, dated December 23, 2015 (contained in the Clerk's DCN file);

5. Letter from Employer's attorney agreeing to File Review Determination, filed January 20, 2016;

6. File Review Docketing Notice, filed February 1, 2016;

7. Position Statement of Employee, filed February 3, 2016;

8. Position Statement of Employer, filed February 8, 2016; and,

9. Email and attachments received from Employer's attorney on February 19, 2016.

The Court reviewed the following documents in reaching its decision and designates the documents as Exhibits solely for ease of reference by the Court:

1. Form C-42 Panel Agreement indicating the selection of Dr. Matthew Lee (contained in Clerk's DCN file);

2. Form C-42 Panel Agreement indicating the selection of Lisa Swofford, NP (contained in Clerk's DCN file);

3. Form C-42 Panel Agreement indicating the selection of Mid-TN Occupational & Environmental Medicine (contained in the Clerk's DCN file);

4. Form C-42 Panel Agreement indicating selection of Dr. Timothy Steinagle (contained in the Clerk's DCN file);

5. Form C-20 First Report of Injury (contained in the Clerk's DCN file);

6. Form C-41 Wage Statement (contained in the Clerk's DCN file);

7. Affidavit of David Tucker (contained in the Clerk's DCN file);

8

8. Affidavit of Gina Ball;

9. Affidavit of Bill Harris;

10. Records of Thomaston Family Medical Center/Paulette Cloud, APRN (contained in the Clerk's DCN file);

11. Records of Middle Tennessee Occupational & Environmental Medicine, Inc. (contained in the Clerk's DCN file);

12. Records of Tennessee Orthopedic Alliance/Dr. Timothy Steinagle (contained in Clerk's DCN file);

13. Records of Tallahassee Orthopedic Clinic/Dr. Matthew Lee (contained in Clerk's DCN file);

14. Florida Workers' Compensation Medical Treatment Status Report signed by Dr. Matthew Lee on November 11, 2015 (contained in Clerk's DCN file);

15. Utilization Review Records of Coventry Health Services indicating the anterior cervical discectomy and fusion C4-C6 is medically necessary (contained in the Clerk's DCN file);

16. Job Description (contained in the Clerk's DCN file);

17. Itemized Statement of Travel Expenses forms (contained in the Clerk's DCN file);

18. Email correspondence between the parties and the Bureau; and,

19. Florida workers' compensation form completed by Dr. Matthew Lee.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 22nd day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------------|---------|-----------|------------------|
| Daniel C. Todd, Attorney | | | X | dantodd@toddfloyd.com |
| Sarah H. Reisner, Attorney | | | X | SReisner@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov