FILED

**December 21, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 10:08 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **JAMES DUKE,** | ) | |
| Employee, | ) | **Docket No. 2016-06-0340** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WEISS PAINTING,** | ) | **State File No. 89416-2015** |
| Employer, | ) | |
| | ) | |
| **And** | ) | |
| | ) | **Judge Joshua Davis Baker** |
| **NATIONWIDE INSURANCE** | ) | |
| **COMPANY,** | ) | |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER DENYING
## TEMPORARY DISABILITY BENEFITS

This claim came before the Court on December 14, 2016, on the Request for Expedited Hearing filed by James Duke pursuant to Tennessee Code Annotated section 50-6-239 (2016). The only disputed issue at this time is Mr. Duke's entitlement to temporary disability benefits. For the reasons provided below, the Court finds Mr. Duke is unlikely to prevail at a hearing on the merits in proving his entitlement to temporary disability benefits and, therefore, denies his request at this time.[1]

### Claim History

On November 21, 2015, Mr. Duke, a house painter, fell and injured his left foot and ankle while working for Weiss Painting. Weiss accepted the claim and began paying him temporary disability. On May 9, 2016, Weiss discontinued temporary disability benefit payments upon receiving information that Mr. Duke had performed painting work

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

for pay. Mr. Duke filed a Request for Expedited Hearing seeking reinstatement of those benefits. That is the only matter at issue in this proceeding.

At the hearing, Richard Hjerbe, the owner of Richard's Painting and Handyman Services, testified he had known Mr. Duke since grade school but had not seen him in several years before they met by chance at a restaurant in Dickson, Tennessee, just before Christmas in 2015.[2] At the restaurant, Mr. Hjerbe noticed Mr. Duke had a cast on his foot. Mr. Duke told him he had an accident at work and broke his ankle. Mr. Hjerbe took Mr. Duke's phone number during the conversation.

In April, the doctor removed Mr. Duke's cast, reduced his restrictions and suggested he resume some physical activity. Around that time, Mr. Hjerbe contacted Mr. Duke. The testimony provided differing accounts of the conversations between the men. According to Mr. Duke, Mr. Hjerbe contacted him for social reasons only. Mr. Hjerbe testified he contacted Mr. Duke to offer him work. According to Mr. Hjerbe, he met Mr. Duke on the morning of April 26, so the two could work together. He testified:

> I met him at McDonald's on Donelson Road. He got out in plain clothes, and I was like well I thought you come [sic] to work? And he said "well I brought my clothes with me because I didn't want my wife to know I'm working, I'm not supposed to be working. I was like, why? And he said "because I broke my ankle and I'm drawing workman's comp. I'm getting four hundred a week."

Mr. Hjerbe testified Mr. Duke worked for him at the home from April 26-28, and received pay of fifteen dollars per hour. With the exception of Thursday, Mr. Hjerbe testified that Mr. Duke worked for eight hours each day. During those days, Mr. Duke removed wallpaper border, cut-in walls and ceilings, and painted doorframes and trim. He climbed ladders to do the work. Mr. Hjerbe testified that Mr. Duke took no regular breaks other than smoke breaks, and he did not complain that the work hurt him.

Mr. Hjerbe said his wife paid Mr. Duke in cash. When asked why he paid Mr. Duke in cash, Mr. Hjerbe stated Mr. Duke told him he could not receive a check because he was "drawing workman's comp." Mr. Hjerbe called Mr. Weiss and told him that Mr. Duke had worked for him.

Mr. Duke denied that he worked for Mr. Hjerbe and denied that Mr. Hjerbe paid him for work. Instead, he maintained he paid social visits to Mr. Hjerbe from April 26-28, and that they visited the jobsite secondarily. Mr. Duke admitted he helped Mr.

---

[2] Mr. Duke testified he had known Mr. Hjerbe since grade school, but had not heard from him in twenty years. However, he also testified that he helped Mr. Hjerbe repair his truck before suffering his workplace injury.

2

Hjerbe with some tasks at the home: He admitted to carrying paint, climbing a ladder to "cut-in" a ceiling and removing wallpaper.[3] He claimed he spent approximately one to two hours assisting Mr. Hjerbe with these tasks on the first day. He denied any of the tasks were outside his restrictions.

Nicky Weiss, the owner of Weiss Painting, testified that he attempted to contact Mr. Duke on several occasions after his injury but could not reach him. After Mr. Duke's restrictions were relaxed, Mr. Weiss told his insurance company he could find work within Mr. Duke's restrictions. Mr. Weiss, however, never had a conversation with Mr. Duke concerning the availability of work. At the hearing, Mr. Duke testified the treating physician has not released him to return to work without restrictions and recently diagnosed him with complex regional pain syndrome.

Mr. Duke denied Mr. Weiss attempted to return him to work. He answered "no sir" when asked whether Mr. Weiss or the insurance company notified him that Mr. Weiss had work available. Mr. Duke further stated he could not have worked as a painter under his restrictions even if work were available. He further testified he spoke with Mr. Weiss on April 27, and Mr. Weiss told him he "wanted him off his workman's comp" and "did not need him anymore." Mr. Weiss denied telling this to Mr. Duke and further denied he terminated Mr. Duke from Weiss Painting.

### Law and Argument

The sole issue for consideration is whether Weiss Painting must resume paying temporary disability benefits. Under the Workers' Compensation law, Mr. Duke bears the burden of proving every element of his claim, including entitlement to additional temporary disability benefits. *See* Tenn. Code Ann. § 50-6-239(c)(6) (2016); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). In the context of an expedited hearing, however, Mr. Duke need only prove a "likelihood of success at a hearing on the merits" concerning his entitlement to temporary disability benefits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2016); *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27. 2015). As explained below, the Court finds Mr. Duke failed to carry that burden.

An employee is entitled to receive temporary partial disability benefits, pursuant to Tennessee Code Annotated section 50-6-207(2) (2016), when an employee is temporarily unable to work but "the temporary disability is not total." *Stem v. Thompson Servs.,* No. M2010-01566-WC-R3-WC, 2011 Tenn. LEXIS 742, at *27 (Tenn. Workers' Comp.

---

[3] To "cut-in" is to paint the corners and edges of a ceiling or wall prior to painting the rest of the ceiling or wall.

Panel July 26, 2011); *Jewell v. Cobble Construction and Arcus Restoration,* No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *22 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015). "Temporary restrictions assigned by physicians during an injured worker's medical treatment do not establish an entitlement to temporary disability benefits if the employee is able to work without loss of income." *Young v. Young Electric Co., et al.*, No. 2016-06-0860, 2016 TN Wrk. Comp. App. Bd. LEXIS 41, at *12 (Tenn. Workers' Comp. App. Bd. Sept. 14, 2016) (citing *Long v. Mid-Tenn. Ford Truck Sales*, 160 S.W.3d 504, 511 (Tenn. 2005); *Vinson v. Firestone Tire and Rubber Co.*, 655 S.W.2d 931, 933 (Tenn. 1983)).

The outcome of this expedited hearing turns almost entirely on the credibility of the witnesses' testimony. In that regard, the Court finds Mr. Hjerbe presented the most credible testimony. Mr. Hjerbe, the most disinterested witness, testified he paid Mr. Duke fifteen dollars per hour to paint a home. He stated that Mr. Duke climbed ladders, cut-in ceilings and walls, carried paint, and removed wallpaper border. He further testified Mr. Duke did all these activities over the three-day period from April 26-28, and asked for cash payment, ostensibly to avoid losing his workers' compensation benefit payments. The Court finds his testimony credible, and finds that Mr. Duke worked as Mr. Hjerbe's employee, performing regular duties as a painter.

Conversely, the Court did not find Mr. Duke's testimony credible for several reasons. First, the events as described by Mr. Duke make little logical sense to the undersigned. The Court finds it implausible that Mr. Duke, who testified he had not seen Mr. Hjerbe in almost twenty years, would meet Mr. Hjerbe at 8:00 a.m. at a McDonald's to have social outings on three consecutive days. Second, Mr. Duke testified inconsistently about his relationship with Mr. Hjerbe. As stated previously, Mr. Duke testified he had not seen Mr. Hjerbe in twenty years. Later, however, he testified he had helped Mr. Hjerbe fix his truck before Mr. Duke suffered his workplace injury. For these reasons, the Court finds Mr. Duke did not provide credible testimony.

The Court finds Mr. Duke performed work as a painter for Mr. Hjerbe over the period from April 26-28, and Mr. Hjerbe paid him for that work. The Court finds he performed this work without difficulty. The Court further finds Mr. Duke willfully attempted to conceal both his ability to work and his receipt of income from Weiss Painting so that he could continue to receive temporary disability benefits. The Court, therefore, holds Mr. Duke had the ability to work and earn a wage, despite the restrictions on activity recommended by his physician, rendering him ineligible for temporary disability benefits. *Young*, 2016 TN Wrk. Comp. App. Bd. LEXIS 41 at *12.

Mr. Duke argued that, even if he worked for Mr. Hjerbe, his work does not disqualify him from receiving temporary partial disability benefits because his doctor has not released him to work at full-duty, and Weiss never offered him work within his restrictions. The Court respectfully disagrees. While the Court agrees that in general an

4

employee who is able to work under restrictions but was not offered accommodating work by his employer would be entitled to temporary partial disability benefits, the entitlement dissolves when an employee willfully attempts to conceal income earned from work in an effort to receive a double recovery. The Court finds that Mr. Duke did exactly that. Accordingly, the Court holds Mr. Duke is not entitled to any additional temporary partial disability benefits.

**IT IS, THEREFORE, ORDERED:**

1. Mr. Duke's claim for reinstatement of temporary partial disability benefits is denied.

2. This claim is set for a scheduling hearing on **February 6, 2017, at 8:30 a.m. (CST).** You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.

**ENTERED ON THIS THE 21st DAY OF DECEMBER, 2016.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

5

<u>Right to Appeal:</u>

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.000. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **<u>Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.</u>**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's

position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:

1. Medical Records
2. Affidavit of James Duke
3. Affidavit of Richard Hjerbe
4. Wage Statement

Technical record:[4]

1. Petition for Benefit Determination filed August 9, 2016
2. Dispute Certification Notice filed September 26, 2016
3. Request for Expedited Hearing filed October 21, 2016

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 21st day of December, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Michael Fisher | | | X | mfisher@ddzlaw.com |
| Lynn Lawyer | | | X | lawyel2@nationwide.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**